595 A.2d 685

**PENNSYLVANIA LIQUOR CONTROL BOARD, Petitioner,**

v.

**William J. FLANNERY, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 10, 1991.

Decided July 12, 1991.

Faith S. Diehl, Asst. Counsel, for petitioner.

Patrick M. McHugh, Harrisburg, for respondent.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

This is an appeal by the Pennsylvania Liquor Control Board (Appointing Authority) from an order of the State Civil Service Commission (Commission) which overruled the Appointing Authority's demotion of William J. Flannery from his position as Liquor Store General Manager 3B, regular status, to Liquor Store Manager 2, regular status, and instead substituted a thirty-day suspension.

The salient facts were stipulated by the parties. Flannery had been employed as a Liquor Store General Manager 3B by the Appointing Authority at Store No. 4601, a wholesale store only, located at the Valley Forge Shopping Center in King of Prussia, Montgomery County. In his position as general manager, he was completely responsible for the entire operation and management of the store. Because Flannery's store was wholesale only, its clientele was primarily limited to licensees of the Appointing Authority

rather than retail customers. Flannery had been employed by the Appointing Authority for more than thirty years and had established an "impeccable work record." His conduct was governed by, *inter alia*, the Appointing Authority's, "Work Rules and Guide to Better Service," a booklet which he admitted having received. That booklet provided, *inter alia*, that theft of Commonwealth property could result in immediate discharge.

For the period from May 31, 1989, through June 27, 1989, the Appointing Authority approved a proposal to conduct a promotional campaign involving Beefeater Gin. The promotion, known as "Your first Beefeater is on us," entailed a fifty milliliter bottle of Beefeater Gin being attached as a "neck hanger" from a 750 milliliter bottle. This promotion was explained by the Appointing Authority in two instructional bulletins. The first, disseminated in March 1989, stated:

> In an exclusive Pennsylvania promotion, the appointing authority is receiving 4,000 cases of Code # 5303, Beefeater Gin, with a free 50ml attached as a neck hanger. The free 50ml is an integral part of the promotion "Your first Beefeater is on us." Shelf talkers and case glorifiers have been approved for period thirteen.[1]

The second bulletin, specially issued, disseminated in July 1989, stated:

> A 50ml bottle is not to be separated from the 750ml bottle on which it is received for any reason. All current inventory on hand of Code # 5303 which does not offer this special value shall be removed from the sales floor/ shelf and placed only when special value pack inventory has been exhausted.

On June 19, 1989 and subsequent occasions cases bearing the promotional stock were delivered to Store No. 4601. Promotional items are not routinely handled at that store because of its wholesale nature. When the June 19 shipment arrived, Flannery was not in the store, and receipt of

---

1. The terms "shelf talkers," "case glorifiers," and "period thirteen," are not explained in the testimony.

the merchandise was handled by the assistant store manager. Thereafter, on July 24, 1989, the Appointing Authority learned that licensees who had purchased the Beefeater Gin from Store No. 4601 had not received the free 50 milliliter bottles in accordance with the promotion.

An Appointing Authority investigation revealed that during the period from June 19, 1989, to July 3, 1989, store employees had separated approximately 360 promotional 50 milliliter bottles from the 750 milliliter bottles, divided them, and taken them home for personal use without authorization. Additionally, some of the 50 milliliter bottles had been distributed to some licensees who had not purchased the promotional product. Flannery's participation involved the removal of 12 of the 50 milliliter bottles from the store. Approximately one week later he returned all of the bottles and on July 25, 1989, store personnel returned 288 of the 50 milliliter bottles and reattached them to the 750 milliliter bottles.

By letter dated August 31, 1989 Flannery was demoted based upon the following charges:

a) You failed to safeguard Commonwealth property by permitting the separation of approximately 360 promotional items, 50ml bottles of Beefeater Gin packaged with Code 5303, by employes under your supervision and *condoned* the removal from the store by store employes of said unit.

b) You participated in the acceptance of a portion of said units.

c) You *condoned* the distribution of said units from Store # 4601 by employes under your supervision to licensees without receiving payment for said items. (Emphasis added.)

Flannery appealed his demotion to the Commission. The Commission observed in its adjudication that the only evidence relevant to intent either to take wrongfully Commonwealth property, or to condone his subordinates for doing so, was the two bulletins. It specifically found credible Flannery's testimony that he did not see the March bulletin

until after the June 19 incident. The Commission wrote "[c]onsidering the customary non-involvement of Store # 4601 in promotional activities, [Flannery's] failure to ascertain the article's relevance to his employment is neither mysterious nor unreasonable. Accordingly, we find that due to that lack of knowledge, the charged 'participation' (in the acceptance of units) can not be accepted as improper." As to the July bulletin, the Commission found that it had not even been circulated until *after* the June 19 incident. Further, it rejected the notion, proposed by the Appointing Authority, that as General Manager Flannery must be held accountable for, *inter alia*, intentional acts committed by subordinates in his absence. Thus, it overruled the demotion.[2] Because the Commission determined, however, that Flannery was lax in not ascertaining whether the 50 milliliter bottles were free samples which could be distributed to employees it imposed a thirty-day suspension. The Appointing Authority then appealed to this Court.

On appeal the Appointing Authority alleges only one error; that the Commission's finding that Flannery had acted without intent is unsupported by substantial evidence. We note, of course, that our scope of review is limited to determining whether the Commission's necessary findings are supported by substantial evidence and whether it has committed legal error or constitutional violations. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Further, we observe that the Commission was entirely correct in requiring the Appointing Authority to prove the charges as set forth in its personnel action letter. While an appointing authority has no general burden to prove an intentional violation of a work rule, we have held that

---

2. The Commission used the just cause standard in assessing the propriety of the demotion. We note that unlike suspension for "good" cause under Section 803 of the Civil Service Act, (Act) Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.803 and removal for "just" cause under Section 807 of the Civil Service Act, 71 P.S. § 741.706, does not contain a statutory standard. We approve of the Commission's application of the just cause standard to a regular status demoted employee because a demotion is actually a "removal" from the higher level position.

where it charges the employee with an intentional violation, rather than with negligence, it must prove intent. *Long v. Pennsylvania Liquor Control Board*, 112 Pa.Commonwealth Ct. 572, 535 A.2d 1233 (1988). Clearly, the first and third charges in the Appointing Authority's letter in this case do involve intent.

■ After a thorough review of the record we hold that the Commission's finding that the Appointing Authority did not prove intent is supported by substantial evidence. Flannery testified, *inter alia*, that he had not read the March bulletin until after the June 19 incident because promotional bulletins were not really relevant to wholesale stores (N.T. 31); that an employee placed a brown bag containing twelve 50 milliliter bottles on his desk while he was on the telephone and told him it was free and that he assumed that statement was accurate (N.T. 32); that the 50 milliliter bottles contained language saying "Free—this one's on us" (N.T. 33); and that he had no intent to deprive the Appointing Authority of its property (N.T. 33).

■ As previously noted, the Commission, although it found that Flannery had no intent to take Commonwealth property or to condone such action on the part of his subordinate employees, did observe that Flannery was lax in assuming that he could take the samples without checking further. Accordingly, it imposed a thirty-day suspension on him. In the past the Commission's authority under the Act to modify a penalty was severely restricted. *See e.g., Omelchenko v. Housing Authority of the County of Lebanon*, 58 Pa.Commonwealth Ct. 494, 428 A.2d 274 (1981). Under *Omelchenko* the Commission could modify a penalty by reinstating with or without backpay, but only if it found that the appointing authority had not made out its charges. A recent amendment to the Act has, however, given the Commission more latitude in penalty modification; it may now "modify or set aside the action of the Appoint-

ing Authority" in addition to limiting backpay as it sees fit.[3] We observe that the Appointing Authority does not even challenge the penalty substitution in this case, and, in any event, we hold that the Commission acted within its authority.

Based upon the foregoing discussion, the order of the Commission is affirmed.

**3.** Section 952(c) of the Act, 71 P.S. § 741.952(c). Section 952(c) was added by Section 21 of the Act of June 26, 1989, P.L. 47, and became effective on that date.