**PENNSYLVANIA GAME COMMISSION, Petitioner,**

v.

**STATE CIVIL SERVICE COMMISSION (TOTH), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1998.

Decided Oct. 23, 1998.

Reargument Denied Dec. 18, 1998.

Thomas W. Scott, Harrisburg, for petitioner.

Debra K. Wallet, Camp Hill, for respondent.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

The Pennsylvania Game Commission (Game Commission) petitions for review of an order of the State Civil Service Commission (Civil Service Commission) reinstating Robert M. Toth (Toth) to his position as personnel director and finding that the Game Commission did not have just cause to terminate him.

The Game Commission is an independent administrative commission under the executive branch of the state government and is governed by eight Game Commissioners who are appointed by the Governor and confirmed by the Senate. With the exception of the Executive Director, all Game Commission personnel are employed in accordance with the classification and compensation plans of the Commonwealth as set by the Office of Administration (OA).[1] Toth was named Chief of Personnel Services for the

---

8. Because we are remanding for a new trial, we need not address Appellants' remaining claims.

1. *See* 34 Pa.C.S. § 303(b).

Game Commission in 1988 and in that capacity was responsible for safeguarding the Commonwealth's payroll system.

In April 1991, OA amended the personnel rules that changed the "longevity increment," the time after which an employee moved to the next step on the pay scale, from one year to seven years for all employees hired after July 1, 1988. The Game Commissioners, however, approved the "Personnel Policies of the Pennsylvania Game Commission" in October 1991. The Game Commission personnel policies defined the term "anniversary date" as "the first day of the first full pay period in the month that an employe is eligible for a pay increment. The initial anniversary date of an employe shall be one year from the date of appointment in the Commonwealth State Government." This definition, however, is not used in any other provision to confer benefits.

Kenneth Hess (Hess), who was Toth's supervisor, was unhappy about OA's change to the initial longevity increment and told Toth to "look into it, see if there is anything we can do." Sometime in January of 1993, Toth learned that the Fish and Boat Commission (Fish Commission) was able to change the time it took to obtain an initial longevity increment to one year by placing incorrect longevity dates into Pennsylvania's payroll computer system.[2] Toth relayed this information to Hess who told Toth to make further investigation and see if it were possible to do the same for Game Commission employees. Toth then directed a personnel assistant to find out how the Fish Commission was making the change, and information was related back to Toth that they could change the initial increment to one year through the computer.

Toth advised Steven Williams (Williams), Deputy Executive Director and the immediate supervisor of Hess, about how to change the longevity increment in the computer.

Williams then told Toth to change Williams' longevity increment and Toth suggested they do the same for Jane Peyton (Peyton), a subordinate of Toth. These changes were to be used as "test cases" to determine the feasibility of reducing the initial longevity increment for other Game Commission employees who were affected by the OA's change to the initial longevity increment. Toth directed that Peyton's longevity date be changed from September 5, 1996 to March 1, 1993, and Williams' longevity date be changed from February 10, 1999 to March 1, 1993. Toth then discussed what he had done with Hess who did not object to the changes.

In the spring of 1993, Greg Matthews (Matthews), a payroll specialist at OA, discovered the change in Peyton's longevity increment and concluded that it should not have been granted.[3] Matthews' supervisor, Curtis MacConnell, then checked the other records and noticed that Williams' date had also been changed. Charles Sciotto (Sciotto), the Deputy Secretary for OA, called Toth about the changed dates and told him that they would have to be changed back, and that Williams and Toth would be required to make restitution for the increases they received.[4] At that point, Toth admitted to Sciotto that it was a mistake and he knew that it was the wrong thing to do.

After Hess retired in July 1994, he wrote a letter to the Game Commissioners discussing the change in the dates and Toth's involvement in the incident. At an October 1994 meeting of the Game Commissioners, Toth admitted that he changed the dates but did so with the approval of Williams and Hess. The matter was then turned over to the Office of the Inspector General (Inspector General). The Inspector General concluded its investigation and forwarded a report to the Game Commissioners, which was discussed at a meeting on January 10, 1995. In that report, the Inspector General concluded

---

2. The Fish Commission is also an independent administrative commission; however, the executive director of the Fish Commission is granted the authority to appoint and fix the compensation of all Fish Commission employees. *See* 30 Pa.C.S. § 304(a).

3. The Game Commission had previously requested a special pay increase for Peyton which was denied by OA.

4. Both Peyton and Williams received the increased pay for approximately two pay periods. Peyton remitted $27.20 and Williams paid back $55.50.

that Toth had acted improperly and had possibly violated the Crimes Code. Following that meeting, Williams was terminated. The Game Commission also sent a letter to Toth indicating that he was suspended pending a disciplinary conference on January 20, 1995. On January 23, 1995, Toth was removed from his position on the charge of "directing that payroll records be changed without justification." His termination letter also stated that he also may have violated the Crimes Code and that his actions brought discredit to the Game Commission.

Although charges were not pending at the time of his dismissal, Toth was later charged with unlawful use of a computer in violation of 18 Pa.C.S. 3393(a)(2), a misdemeanor of the first degree. Toth was accepted into the Accelerated Rehabilitation Disposition (ARD) program [5] on those charges.

Toth appealed his dismissal to the Civil Service Commission contending that he was only following the direction of Hess and Williams and, therefore, his actions were not "without justification." Toth contended that it was Game Commission policy not to go along with OA on personnel decisions, and that on two previous instances Hess had directed him to ignore the mandates from OA and implement what was considered Game Commission policy. In one instance in 1989, Hess directed Toth to place Game Commission employees on a 40 hour week instead of a 37½ hour week. When Toth requested permission from OA to do so, it was denied. The Game Commission, however, persisted and refused to switch their employees back to a 37½ hour week.[6] In another incident, Hess ordered Toth to pay the salary of an employee who returned to graduate school despite OA's refusal to approve

the arrangement. Toth also argued that the personnel policies of the Game Commission authorized him to make such changes and, furthermore, that the Fish Commission had similar policies that authorized them to change the longevity increment for its employees. In any event, he contended that when he changed the payroll records, he was only following instructions of his superiors.

Following a hearing, the Civil Service Commission found that because Toth admitted to directing that the longevity dates be changed, the only issue remaining was whether he did so "without justification" as stated in his termination letter. The Civil Service Commission agreed with Toth that he did not act "without justification" as charged by the Game Commission because the changes were made at the direction and with the approval of his supervisors which constituted justification for his actions. It also agreed with Toth that there was a history of non-compliance by the Game Commission with OA's directives regarding personnel matters that provided further justification for his actions. Although it did find that Toth was responsible for safeguarding the Commonwealth's payroll system, ensuring that the personnel policies of the Commonwealth were followed, and that his actions demonstrated "exceptionally poor judgment," the Civil Service Commission nonetheless concluded that Toth acted with sufficient justification and that termination was not warranted. It ordered that Toth be reinstated to his position with the Game Commission, albeit without backpay. This appeal by the Game Commission followed.

Recognizing that our standard of review of the Game Commission's decision is extremely limited,[7] the Game Commission contends that

**5.** ARD is a pretrial disposition of certain cases in which the attorney for the Commonwealth agrees to suspend prosecution of the charges for an agreed upon period of time in exchange for a defendant's participation in a rehabilitation program. After the program has been completed successfully, the charges against the defendant will be dismissed upon order of the court. *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985); *see also* Pa. R.Crim. P. 175–185.

**6.** The Game Commission subsequently reached an agreement with OA whereby it would place its employees back on a 37½ hour work week but

would retain the same compensation they had received on the 40 hour schedule.

**7.** In reviewing the Civil Service Commission's modification of the penalty imposed by an appointing authority pursuant to Section 952(c), we are limited to determining whether the Commission committed an error of law, abused its discretion or found facts that were not supported by substantial evidence. *Metrick v. Civil Service Commission,* 687 A.2d 26 (Pa.Cmwlth.1996); *Balas v. Commonwealth, Department of Public Welfare,* 128 Pa.Cmwlth. 205, 563 A.2d 219 (1989).

the Civil Service Commission erred when it found that Toth was not terminated for "just cause"[8] because Toth did not have justification to alter personnel records simply because he was instructed by supervisors to do so when he admitted that he knew it was the wrong thing to do. It maintains that there never is a justification for a person in Toth's position to act as he did and that it was "manifestly unreasonable" for the Civil Service Commission to reinstate Toth to his previous position following his violation of public trust and "exceptionally poor judgment."

∎ When reviewing personnel actions, the Civil Service Commission has been given wide latitude by the General Assembly to modify a penalty, including termination for just cause imposed by an appointing authority, in this case, the Game Commission. Section 952(c) of the Civil Service Act (Act)[9] provides:

> In the case of an employe removed, furloughed, suspended, or demoted, the commission may modify or set aside the action of the appointing authority. Where appropriate, the commission may order reinstatement with the payment of so much of the salary or wages lost, including employe benefits, as the commission may in its discretion award.

Under this provision, the Civil Service Commission has the power to modify the action of an appointing authority, even where the charges brought against the employee are proven. *Galant v. Department of Environmental Resources*, 534 Pa. 17, 626 A.2d 496 (1993); *see also Pennsylvania Liquor Control Board v. Flannery*, 141 Pa.Cmwlth. 228, 595 A.2d 685 (1991) (where the Commission found that an employee of a state liquor store was "lax" in assuming he could take samples for his own use but did not intend to take Commonwealth property, the Commission

acted within its discretion by modifying his dismissal to a 30-day suspension).

Recently, in *State Correctional Institution at Graterford, Department of Corrections v. State Civil Service Commission (Terra)*, 718 A.2d 403, (1998), this Court addressed the latitude that the Civil Service Commission has in overturning a decision of the agency holding that while it was broad it was not unfettered. We held that the Civil Service Commission was akin to the discretion of arbitrators in grievance-arbitration decisions under Act 195,[10] and that its decision could be reversed if it was "manifestly unreasonable." We stated:

> In *[Department of Corrections v. Roche*, 654 A.2d 64 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 541 Pa. 644, 663 A.2d 695 (1995)]* a corrections officer was discharged due to his failure to report an inmate beating and his perjury before a grand jury concerning the beatings. The Commission modified his penalty from removal to a 30-day suspension pursuant to Section 952(c) of the Act. Despite concluding that the appointing authority had, in fact, proven that the employee violated the Code of Ethics, the Commission determined that his violations nonetheless did not warrant removal and imposed only a 30-day suspension. Although noting the Commission's wide discretion, we held that its discretion was not unfettered and because of the severity of the employee's actions, we determined that the Commission abused its discretion in not affirming the appointing authority's discharge. The Department contends that situation exists here because it showed that Terra's conduct was such that that the Commission abused its discretion in not finding just cause for removal.

> The limits on the Commission's discretion that we delineated in *Roche* are akin

---

8. Section 807, 71 P.S. § 741.807, provides that a civil service employee may only be removed upon a showing of just cause by the appointing authority. Although the term is not defined in the Act, just cause for dismissal must be related to the employee's job performance and touch in some rational and logical manner upon the employee's competency and ability. *Department of Corrections v. Roche*, 654 A.2d 64 (Pa.Cmwlth.),

*petition for allowance of appeal denied*, 541 Pa. 644, 663 A.2d 695 (1995).

9. Act of August 5, 1941, P.L. 752, *added by* Act of June 6, 1989, P.L. 47, *as amended*, 71 P.S. § 741.952.

10. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–2301.

to the "essence test" standard that we use to review grievance-arbitrations under Act 195, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–2301. Under that standard, if the arbitrator's decision is one that, after reviewing the evidence, no rational person could agree that the outcome imposed by the arbitrator was proper, **i.e., that it was manifestly unreasonable, then that decision can be reversed.** *See, e.g., Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989) (award not rational where arbitrator found grievant guilty of theft and other crimes against employer, but considered other factors in mitigation in determining that there was no "just cause" for his discharge and substituted a lesser penalty); *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988) (award was not rational where arbitrator found grievants to have engaged in abusive conduct to an inmate of the prison, including assaultive behavior, but arbitrator considered certain mitigating factors to find no "just cause" for dismissal and substituted a lesser penalty).

*Id.* at 403 (emphasis added).

Consequently, we must determine whether the decision of the Civil Service Commission to reinstate Toth was "manifestly unreasonable."

When faced with an analogous situation, our Supreme Court in *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989), held that an arbitrator's decision to reinstate a personnel director after he falsified store records was manifestly unreasonable. In that case, the appellant was in charge of directing personnel for a Liquor Control Board store. He was suspended and later dismissed for falsifying store business records and misappropriating funds belonging to the store. Before he was dismissed, however, he checked himself into a hospital, suffering from some sort of mental illness. He filed a grievance to his dismissal which proceeded to arbitration. The labor agreement stated that the Commonwealth could not suspend or discharge any management employee without "just cause." At the hearing be-

fore the arbitrator, the appellant did not deny that he had falsified the records, but defended his actions on the basis of his mental illness, which he claimed rendered him not responsible for his actions.

The arbitrator, finding that he did commit the infractions alleged, nevertheless reduced the penalty to the appellant because appellant's actions were the result of his mental illness and, thus, not his fault. The arbitrator then reinstated the appellant to his position and treated the time after his termination as a suspension. The Liquor Control Board appealed to this Court which affirmed because the arbitrator's decision met the essence test. Our Supreme Court reversed, however, holding that the arbitrator's decision did not meet the essence test because the actions of the appellant clearly constituted "just cause" for his dismissal. The Court stated:

> It would be "manifestly unreasonable" to conclude that any agency of this Commonwealth ... intended to bargain away its responsibility to ensure the financial integrity of its operation by discharging an employee who has ... falsified records.

*Id.* at 76, 553 A.2d at 953. The Court also noted that the falsification of records was not disputed by the appellant. Moreover, the Court dismissed any defenses of mitigation or culpability stating:

> In this setting the issue must be confined to the competency and ability of the employee to perform the tasks in the position he is serving. The fact that the dereliction may not have been maliciously inspired ... has no place in this inquiry.

*Id.* The Court then reversed the arbitrator's decision and reinstated the termination.

■ In this case, we find that the decision of the Civil Service Commission to reduce Toth's penalty from dismissal to suspension is "manifestly unreasonable." Much like the appellant in *Independent State Stores,* Toth admitted to directing that the dates be changed and that he knew his decision to do so was wrong. Therefore, we believe that the Game Commission had "just cause" to terminate him as a result of his misconduct. The Game Commission, like the Liquor Con-

trol Board, maintained its right to ensure the financial integrity of the payroll system by discharging an employee who compromised its integrity while it was his job to protect the system.

We also find unavailing Toth's argument that he had justification for his actions in the form of approval from supervisors. Not only has this Court stated previously that the obedience of a supervisor's order is not a defense to dismissal of a civil service employee, *Benvignati v. Civil Service Commission,* 106 Pa.Cmwlth. 643, 527 A.2d 1074, *petition for allowance of appeal denied,* 517 Pa. 600, 535 A.2d 1058 (1987),[11] but the record also reflects that Toth was never directly ordered to see that the changes were made. The Civil Service Commission only found that his supervisors approved of changing the date. In actuality, after being told by Hess to look into the situation, Toth took the initiative of finding out how to change the dates and then reported to Williams who, standing to gain from the change, voiced his approval to go ahead and make the changes. Rather than being a person that carried out a functionary task, Toth was part of the conspiracy to change the records to receive unauthorized longevity pay.

Moreover, the fact that the Game Commission had a history of not following OA directives with regard to personnel matters is of no consequence in this case. Our Supreme Court rejected a similar argument in *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988), as justification to prohibited behavior. In *Musser,* two corrections officers were dismissed after they mistreated an inmate on several occasions. One defense to their actions was that such treatment of inmates constituted mere horseplay that had long been tolerated without leading to a dismissal of a guard. The arbitrator found that such actions were commonplace and tolerated at the prison and reduced their penalty to a suspension. The Supreme Court reversed the decision finding that the arbitrator's decision was manifestly unreasonable. The Court also rejected the argument that be-

cause this type of action was ordinarily performed at the prison, the officers had justification for their actions. Consequently, Toth's argument to that effect is equally without merit.

For these same reasons, Toth's argument that the Game Commission's personnel policies authorized his actions must also fail. Not only did the term "anniversary date" have no substantive application in the personnel policies, but as the Civil Service Commission indicated, "Toth should have used better judgment and sought more direct authority from the Game Commissioners themselves" before deciding to act. As our Supreme Court stated in *Independent State Stores,* the fact that Toth's misdeeds were in good faith and not maliciously inspired have no place in the inquiry. *See also Pinkney v. Civil Service Commission,* 688 A.2d 1252 (Pa.Cmwlth.1997) (good faith belief that actions are authorized not defense to civil service dismissal); *Geissler,* 463 A.2d at 1287, n. 5 (mere good faith in making an improper payment of public funds is not recognized as any excuse whatsoever).

Because we find that the Civil Service Commission's finding that "just cause" did not exist for the Game Commission to terminate a person who acknowledged that he falsified government records knowing that it was wrong is manifestly unreasonable, the Civil Service Commission abused its discretion in reinstating Toth and its decision is reversed.

### ORDER

AND NOW, this 23rd day of October, 1998, the order of the Civil Service Commission at Appeal No. 18530, dated November 24, 1997, is reversed.

---

**11.** *See also Geissler v. Board of Commissioners of Upper Dublin Township,* 76 Pa.Cmwlth. 426, 463 A.2d 1284 (1983) (a public employee cannot blindly follow a supervisor's order which the employee knows or has reason to know violates the law).