Rosetta ELLERBEE–PRYER,
Petitioner,

v.

STATE CIVIL SERVICE COMMISSION (Department of Corrections, SCI Graterford), Respondent.

Commonwealth Court of Pennsylvania.

Argued June 10, 2002.

Decided July 10, 2002.

Karen Kress Weisbord, Philadelphia, for petitioner.

Nicole L. Adams, Camp Hill, for respondent.

BEFORE: COLINS, President Judge, PELLEGRINI, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

Rosetta Ellerbee–Pryer (Ellerbee–Pryer) appeals from an order of the State Civil Service Commission (Commission) affirming the decision of the Department of Corrections, SCI Graterford (Employer) to terminate her employment because her discharge was for just cause.

Ellerbee–Pryer was employed as a Corrections Officer 1 at SCI Graterford. In May 1999, she tested positive for alcohol while at work. As a result, on June 30, 1999, she entered into a Conditions of Continued Employment Agreement (COCE Agreement) with Employer which provided that she was to be evaluated for alcohol treatment by the State Employee Assistance Program (SEAP) evaluator, fully accept the recommendation made by the evaluation, and fully cooperate with any treatment program deemed appropriate by SEAP. The COCE Agreement specified that if she did not successfully complete treatment or if she failed to meet any of the Agreement's conditions, she would be notified and subject to disciplinary action up to and including termination.

Ellerbee–Pryer was evaluated by Dr. Zahn, a psychologist who served as the SEAP evaluator. Pursuant to her recommendation, by September 1999, Ellerbee–Pryer was placed into "Rehab After Work," an alcohol treatment facility. Beginning in October 1999, Ellerbee–Pryer was placed in its outpatient treatment program where she was required to attend group therapy once a week. Demerse

Nemeth (Nemeth), Ellerbee–Pryer's primary therapist at the facility, told Ellerbee–Pryer that if she was absent from any of her sessions, she had to provide documentation explaining the reason why, and if she failed to do so, the absences would not be excused. Dr. Zahn reevaluated Ellerbee–Pryer in October 1999 and recommended that she also attend individual psychological counseling in addition to her treatment at Rehab After Work. Ellerbee–Pryer chose Dr. Shapiro to provide her with psychotherapy.

Ellerbee–Pryer was absent from scheduled sessions at Rehab After Work on March 16 and 30, April 13 and 20, and May 4, 2000. She did not provide any written explanation for her absences and the absences were not excused. She also missed therapy sessions with Dr. Shapiro on March 29, April 5, 12 and May 3, 2000. As a result of those absences, Robert Peckham (Peckham), the Program Facilitator for the SEAP Central Coordinating Office, sent Ellerbee–Pryer a letter dated May 9, 2000, indicating that she was not compliant with her COCE Agreement because she had missed four scheduled appointments with her treatment provider, Dr. Shapiro, as well as several group sessions. The letter further indicated that Ellerbee–Pryer was scheduled to attend individual counseling sessions on May 10 and 11 and that she had to attend these and any subsequently scheduled appointments in order to remain in compliance with the COCE Agreement. A copy of this letter was sent to Jeffrey Johnston (Johnston), who served as the SEAP Program Administrator in the Office of Administration.

Following several more absences from sessions with Rehab After Work, on May 18, 2000, Nemeth required Ellerbee–Pryer to sign a Special Therapeutic Contract with Rehab After Work agreeing, among other things, to attend and be on time for all scheduled sessions and appointments. On May 22, 2000, Johnston sent a memo to Barbara Wolfe (Wolfe), the SEAP Coordinator for Employer, advising her that Ellerbee–Pryer had been sent a warning for not fully complying with the terms and conditions of the COCE Agreement, with a copy of Peckham's May 9, 2000 letter attached. Subsequently, on May 25, June 8, July 18 and 25, and August 8, 2000, Ellerbee–Pryer had unexcused absences from Rehab After Work because she failed to appear and failed to provide documentation for her absences.

By letter dated August 9, 2000, Nemeth notified Ellerbee–Pryer that she had discharged her from Rehab After Work due to her "recent unexcused absence and sporadic attendance over the past few months." By letter dated August 10, 2000, Peckham notified Ellerbee–Pryer that she had been discharged from SEAP for failing to comply with her obligation to follow through with the treatment recommendations because she was absent from her treatment at Rehab After Work on May 25, June 8 and 28, July 5, 18 and 25, and August 2. On August 21, 2000, Johnston sent Wolfe a memo advising her that Ellerbee–Pryer had been discharged from SEAP for non-compliance with the terms and conditions of the COCE Agreement, and Wolfe in turn notified Employer. As a result of Ellerbee–Pryer's discharge from SEAP, Employer held a pre-disciplinary conference with Ellerbee–Pryer on August 28, 2000, at which she was questioned about the seven absences in the August 10, 2000 letter and the four absences addressed in Peckham's May 9, 2000 letter. Following that conference, Employer sent Ellerbee–Pryer a letter dated September 23, 2000, stating that she was terminated from her employment as a Corrections Officer I for violating the conditions of the COCE Agreement.

Ellerbee–Pryer filed an appeal with the Commission which held a hearing at which Ellerbee–Pryer testified regarding her absences. Regarding her sessions with Dr. Shapiro, she stated that because it was she who initiated her treatment with him, the sessions were voluntary. She stated the only treatment that was mandatory under the COCE Agreement was the treatment she received from Rehab After Work. Nonetheless, regarding her missed appointments with Dr. Shapiro, she stated that she missed her March 30, 2000 appointment because her son was suspended from school; her appointment on April 5, 2000 was missed due to her uncle's funeral; and she missed appointments on April 13 and 20 due to chicken pox. As to her absences at her group sessions at Rehab After Work, she testified that she missed her May 25 session because her brother had been shot; she suffered a work-related injury to her finger and could not attend her July 18 session; and she had overslept on July 25. She provided no testimony regarding her absences on June 8 and August 8. Ellerbee–Pryer testified that she was not required to bring in documentation for missed appointments and was never asked for documentation, but was only required to call Rehab After Work to inform them of the reason she would not be present, and she called Nemeth and left a message before every appointment she missed. In any event, Ellerbee–Pryer stated that Employer should have determined if the reasons for her absences were legitimate, not Nemeth or Dr. Shapiro.

In support of her termination, Employer presented the testimony of Peckham, Nemeth and Johnston. Peckham testified that Dr. Zahn made a recommendation that Ellerbee–Pryer attend individual counseling sessions in addition to her group sessions at Rehab After Work. Although Ellerbee–Pryer selected Dr. Shapi-ro to provide the individual counseling sessions, Peckham stated that he told Ellerbee–Pryer that any recommendation by Dr. Zahn became a mandatory part of her treatment plan, including the private counseling sessions. Peckham explained that the dates listed in the May 9, 2000 letter involved absences from her mandatory individual counseling sessions with Dr. Shapiro. Peckham also stated that he was advised by Nemeth of various dates of treatment that Ellerbee–Pryer had missed which Nemeth deemed unacceptable excuses, and because it was the treatment provider who determined which excuses were reasonable and not him, he did not second guess the treatment plan or make an independent judgment as to whether the excuses or absences were reasonable. Peckham stated that Dr. Shapiro also informed him that Ellerbee–Pryer's lack of attendance was not acceptable.

Nemeth testified that Ellerbee–Pryer had initially been involved in intensive outpatient treatment with Rehab After Work which consisted of treatment four days per week. After Ellerbee–Pryer completed this phase of her treatment in October 1999, she was transferred to the outpatient program which only required her to attend a group therapy session once a week. Nemeth testified that she told Ellerbee–Pryer she needed to provide appropriate documentation for her absences and, if not, they would not be excused. She then testified that regardless of this conveyance, Ellerbee–Pryer failed to attend sessions on March 16 and 30, 2000, and April 13 and 20, 2000, without any excuse. She further explained that as a result of her continued absences, she asked Ellerbee–Pryer to enter into a Special Therapeutic Contract on May 18, 2000. Nonetheless, Ellerbee–Pryer had several absences after that date and did not provide any documentation for

those absences. Specifically, Nemeth testified that on May 25, 2000, Ellerbee–Pryer was absent and did not contact her directly, but instead, an individual identifying herself as Ellerbee–Pryer's "sponsor" called and said that Ellerbee–Pryer's brother had been shot. On June 8, Ellerbee–Pryer called her to inform Nemeth that she had overslept. On July 18, Ellerbee–Pryer told Nemeth that she had injured her finger. On July 25, Ellerbee–Pryer called stating she had overslept again. Nemeth stated that she reminded Ellerbee–Pryer on August 1, 2000, of her contract and reread it with her; however, on August 8, 2000, Ellerbee–Pryer was again absent but did not contact her. Nemeth stated that she called Ellerbee–Pryer and left several messages asking her to return the call, but Ellerbee–Pryer did not call her back. Nemeth indicated that it was at that point that she recommended Ellerbee–Pryer be discharged from the treatment program due to her excessive absences because she had spoken to Ellerbee–Pryer on many occasions about her absences but it was to no avail. On cross-examination, Nemeth stated that Ellerbee–Pryer was not mandated to be at any counseling session at Rehab After Work on June 28, July 4 and 5, and August 2, 2000, four of the dates relied upon in Peckham's letter discharging Ellerbee–Pryer from SEAP.

Johnston testified that he discussed Ellerbee–Pryer's discharge from SEAP with Peckham prior to making his decision and approved the discharge because she was non-compliant with the requirements of her treatment program. He stated that he did not independently verify the underlying reasons for her discharge from Rehab After Work.

■ The Commission determined that based on the evidence presented, Ellerbee–Pryer had violated her COCE Agreement by failing to comply with the recommendation of her treatment program and her discharge from employment was for just cause. The Commission noted that while it was commendable that Ellerbee–Pryer chose Dr. Shapiro for treatment, that choice did not make that part of her treatment program voluntary. Additionally, Ellerbee–Pryer had numerous unexcused absences even after she was notified that she was not compliant with her COCE Agreement and that she had to attend all of her scheduled appointments, and she signed a Special Therapeutic Contract expressly agreeing to attend all scheduled sessions and appointments. Finally, the Commission stated that the evidence was clear that it was not Employer's responsibility to determine if the absences were for a legitimate reason but that it was the treatment provider who had the sole responsibility to determine whether her absence would be excused. This appeal by Ellerbee–Pryer followed.[1]

■ Ellerbee–Pryer first contends that there was no just cause for her termination because Employer failed to prove that the 11 absences from treatment appointments were mandated and unexcused by the treatment provider.[2] She argues

1. Our scope of review of a decision of the Commission is limited to determining whether findings of fact are supported by competent evidence, whether errors of law have been committed or whether constitutional rights have been violated. *Pennsylvania Game Commission v. State Civil Service Commission,* 561 Pa. 19, 747 A.2d 887 (2000).

2. When an employee alleges lack of just cause for removal, the burden of proving a prima facie case of just cause lies with the appointing authority, in this case, Employer. *Chittister v. State Civil Service Commission,* 789 A.2d 814 (Pa.Cmwlth.2002). To show just cause for the removal of a regular status civil service employee, the employer must show that the actions resulting in the removal are relat-

that seven of the 11 dates—all four in the May 9, 2000 letter and three of the seven in the August 10, 2000 letter—were not mandated by Rehab After Work, but were treatment sessions with her private psychologist, Dr. Shapiro, who never found any of the seven dates to be unexcused absences. Ellerbee–Pryer points out that Dr. Shapiro was never subpoenaed by Employer to testify regarding those absences, even though he would have been the only witness able to substantiate whether the absences were unexcused and mandated.

Employer, however, argues that it provided more than sufficient evidence to prove Ellerbee–Pryer was in violation of the COCE Agreement to substantiate just cause for her termination. As to the specific seven appointments missed with Dr. Shapiro, it points out that Peckham testified that he spoke to Dr. Shapiro who told him that Ellerbee–Pryer's absences were not acceptable. Employer also points out that Nemeth testified that due to Ellerbee–Pryer's poor attendance, she felt it was necessary to have Ellerbee–Pryer enter into a Special Therapeutic Contract agreeing to attend all future sessions, and at the time the Contract was executed, she explained to Ellerbee–Pryer that she was in danger of being discharged from the program. She also testified that Ellerbee–Pryer had unexcused absences on May 25, June 8, July 18 and 25, and August 8 because she did not provide documentation regarding her excuses for her absences,

and those absences ultimately caused her to be terminated from the program.

 The Commission is the sole fact finder in civil service cases and has exclusive authority to assess witness credibility and to resolve evidentiary conflicts. *Hetman v. State Civil Service Commission,* 714 A.2d 532 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 558 Pa. 634, 737 A.2d 1227 (1999). Although Dr. Shapiro did not testify as to whether the absences were unexcused, the Commission found Peckham credible that Dr. Shapiro did not find Ellerbee–Pryer's absences acceptable. The Commission also found Nemeth credible regarding Ellerbee–Pryer's five unexcused absences from Rehab After Work after she had been warned that she would be terminated from the program if she failed to attend the group therapy sessions. Because we will not disturb the Commission's determinations regarding credibility or the weight of the evidence, *Martin v. State Civil Service Commission (Department of Community and Economic Development),* 741 A.2d 226 (Pa.Cmwlth.1999), the testimony of Peckham and Nemeth were sufficient to prove that Ellerbee–Pryer had failed to comply with her recommended program and Employer had just cause for terminating her from employment.[3]

Ellerbee–Pryer also argues that she was terminated from employment in violation of her due process rights because the sub-

---

ed to an employee's job performance and touch in some rational and logical manner upon the employee's competence and ability. *Pennsylvania Department of Labor and Industry v. Civil Service Commission (Davis),* 693 A.2d 634 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 550 Pa. 712, 705 A.2d 1312 (1997). Whether actions of a civil service employee constitute just cause for removal is a question of law fully reviewable by this Court. *Id.*

3. Ellerbee–Pryer also contends that the Commission erred when it relied upon Peckham's testimony because it was inaccurate on critical issues of fact, i.e., dates of unexcused absences, as compared to the written record. However, because the written record as well as testimony from Nemeth indicates that Ellerbee–Pryer had numerous unexcused absences, we find any error in the Commission's reliance on Peckham's testimony regarding confusion of dates *de minimis.*

ject matter of her pre-disciplinary conference was different from the reason she was terminated from employment.[4] She explains that the only reason presented to her as a basis for discipline at the conference was whether she had 11 unexcused absences, yet the Commission allowed a general charge of violating the COCE Agreement and a discharge from SEAP to serve as the basis for her termination.

 Due process has been defined as that which is reasonably calculated to inform interested parties of the pending action and the information necessary to provide an opportunity to present objections. *McAndrew v. State Civil Service Commission (Department of Community and Economic Development)*, 736 A.2d 26 (Pa. Cmwlth.1999), *petition for allowance of appeal dismissed*, 563 Pa. 168, 758 A.2d 1167 (2000), *cert. denied*, 532 U.S. 1066, 121 S.Ct. 2216, 150 L.Ed.2d 210 (2001). Here, there is no question that Ellerbee–Pryer was made aware that her pre-disciplinary conference was for the purpose of addressing her 11 absences and that was the context of that hearing at which she was able to respond to the charges. Because Ellerbee–Pryer signed the COCE Agreement indicating that she had to comply with the recommended program treatment or be subject to discipline or termination, her argument that her termination on the basis of a general charge of violating the COCE Agreement instead of the specific charges of unexcused absences is disingenuous. She was well aware that the violation resulted from her failure to comply with her recommended program by repeated unexcused absences. Therefore,

we find no violation of her due process rights.

Accordingly, the decision of the Commission is affirmed.

### ORDER

AND NOW, this *10th* day of *July*, 2002, the order of the State Civil Service Commission, dated December 19, 2001, is affirmed.

---

4. The Fourteenth Amendment to the United States Constitution provides:

 All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
 U.S. Const. amend. XIV, § 1.