DEPARTMENT OF CORRECTIONS, State Correctional Institution at Chester, Petitioner

v.

STATE CIVIL SERVICE COMMISSION (MASON), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 20, 2003.

Decided Dec. 17, 2003.

BEFORE: HONORABLE SMITH–RIBNER, Judge HONORABLE LEAVITT, Judge HONORABLE MIRARCHI, JR., Senior Judge

## OPINION BY SENIOR JUDGE MIRARCHI

The Department of Corrections (Department), State Correctional Institution at Chester (SCI–Chester) appeals from an order of the State Civil Service Commission (Commission) that modified the disciplinary action taken by the SCI–Chester against the corrections officer from removal to five-day suspension. We affirm.

Vincent C. Mason (Lt.Mason) was a Corrections Officer 3/Lieutenant, a regular civil service position, at the SCI–Chester until the SCI–Chester terminated his employment on April 4, 2002 for violating the Code of Ethics. Lt. Mason appealed the termination to the Commission, and a hearing was held before a hearing officer. After the hearing, the Commission issued an adjudication setting forth the following events leading to the termination of Lt. Mason's employment.

On February 7, 2002, Lt. Mason worked on the 2:00 p.m. to 10:00 p.m. shift. While he was at work, Julia Montijo baby-sat Lt. Mason's two daughters, seven and eight years old, who were visiting him for the first time. Montijo had earlier told Lt. Mason that she could baby-sit his children only until 11:00 p.m. because she would have to take her children to school and then go to work the next morning. At approximately 9:40 p.m. or 9:45 p.m. on February 7, 2002, a Corrections Officer Trainee, K.I. Brown, cut her finger and had to be taken to the hospital. Under an unwritten policy at the SCI–Chester, "a commissioned officer," i.e., a Corrections Officer 3/Lieutenant, a Corrections Officer 4/Captain, or a Corrections Officer 5/Major, must escort an injured officer or staff to the hospital. Despite this policy, non-commissioned officers had been permitted in the past to take the injured officers and staff to the hospital. The SCI–Chester also had a formal policy requiring commissioned officers to work mandated overtime.

After being informed by Captain Thomas Terra that a commissioned officer must escort Brown to the hospital, the shift commander, Captain Kevin C. Jones (Capt.Jones), told Lt. Mason that he "would probably have to escort" Brown to the hospital.[1] Commission's Adjudication,

---

1. Capt. Jones had recently been transferred on December 24, 2001 from the SCI–Grater- ford to the SCI–Chester.

Findings of Fact No. 16. Lt. Mason then replied that "he did not have the f—king time." *Id.* Lt. Mason also told Lt. Richard Seddon, in the presence of Capt. Jones, that he could not work overtime because he had to pick up his children from the baby-sitter. Capt. Jones later ordered Lt. Mason to take Brown to the hospital. Lt. Mason refused to obey the order.

Lt. Mason thereafter asked Sergeant Burley Clark, who had previously escorted an injured correction officer to the hospital, to volunteer to take Brown to the hospital. When Clark agreed to volunteer, Lt. Mason asked Capt. Jones to call Major Michael Musser (Maj.Musser) and ask if Clark could escort Brown to the hospital. After Lt. Mason refused Capt. Jones' second order to take Brown to the hospital, Capt. Jones called Maj. Musser and was told that Lt. Mason must follow the order and that Sergeant Clark could escort Brown, however, if necessary. Lt. Mason later called Maj. Musser at home without Capt. Jones' permission in violation of the normal practice. Sergeant Clark subsequently escorted Brown to the hospital and returned to the SCI–Chester at 2:30 a.m. the next morning. Lt. Mason testified that he told Capt. Jones that he could not escort Brown because his baby-sitter had to leave at 11:00 p.m. Capt. Jones contradicted Lt. Mason's testimony, stating that Lt. Mason did not give any specific reason for his refusal to obey the order. It is undisputed that during his employment since 1990, Lt. Mason previously had never refused to obey his superiors' order.

On February 17, 2002, Capt. Mark Cook investigated Lt. Mason's alleged refusal to obey Capt. Jones' order on February 7, 2002. During the investigation, Capt. Cook first asked Lt. Mason if Capt. Jones ordered him to take Brown to the hospital. Lt. Mason replied, "not initially." Commission's October 7, 2002 Hearing, N.T., p. 145. Capt. Cook later asked Lt. Mason when Capt. Jones ordered him to escort Brown. Lt. Mason then gave Capt. Cook "an approximate time." *Id.* Determining that Lt. Mason disobeyed Capt. Jones' order on February 7, 2002 and was untruthful and evasive during the investigation, Capt. Cook recommended a pre-disciplinary conference. During Capt. Cook's investigation and the subsequent pre-disciplinary conference, Lt. Mason explained that he could not obey Capt. Jones' order because the baby-sitter was not available after 11:00 p.m. on February 7, 2002.

The SCI–Chester's Superintendent, Mary Leftridge Byrd, reviewed the record of Lt. Mason, including the reports of Capt. Jones and Capt. Terra prepared immediately after the February 7, 2002 incident, in which they acknowledged that Lt. Mason could not work overtime on that day because of the family commitment. In a memorandum dated March 23, 2002, the Director of the Department's Bureau of Human Resources advised Superintendent Byrd that the normal range of sanctions for Lt. Mason's conduct was a five-day suspension with a final warning or a demotion to a Corrections Officer 1 position and that to deviate from the normal range, she must submit a supporting written report and obtain the Deputy Secretary's prior approval.

After obtaining approval through e-mail, Superintendent Byrd terminated Lt. Mason's employment as of April 4, 2002 for violating Sections B.9, B.10 and B.29 of the Code of Ethics, which provided in relevant part:

9. Lawful orders by a supervisor to a subordinate must be executed promptly and faithfully by the subordinate even though the employe may question the wisdom of such order. The privilege of formally appealing the order may be done at a later date through either the supervisory command structure, civil

service appeal, or the grievance machinery.

10. Employes are expected to treat their peers, supervisors and the general public with respect and conduct themselves properly and professionally at all times; unacceptable conduct or insolence will not be tolerated.

. . . .

29. All employes shall comply and cooperate with internal investigations conducted under the authority of the Department of Corrections, and respond to questions completely and truthfully.

Noting Capt. Jones' own testimony that he only discussed with Lt. Mason about escorting Brown to the hospital and did not officially order him to do so initially, the Commission concluded that the Department failed to substantiate the charge that Lt. Mason violated Section B.29 of the Code of Ethics by being untruthful and evasive during Capt. Cook's investigation. The Commission further concluded that the Department established that Lt. Mason violated Sections B.9 and B.10 of the Code of Ethics by refusing to obey Capt. Jones' order and using profanities on February 7, 2002. The Commission concluded, however, that Lt. Mason's violations did not constitute just cause for removing Lt.

Mason. The Commission accordingly modified the removal of Lt. Mason and imposed a five-day suspension without pay. The Commission ordered the Department to pay Lt. Mason back wages and emoluments, except for the five-day suspension period.[2] The Department's appeal to this Court followed.

 On appeal, the Department does not challenge the Commission's conclusion that it failed to substantiate the charge that Lt. Mason was untruthful and evasive during the investigation. The Department contends, however, that it established just cause for removing Lt. Mason by demonstrating his violations of Sections B.9 and B.10 of the Code of Ethics, and that the Commission abused its discretion in modifying the disciplinary action taken by the SCI–Chester against Lt. Mason.[3]

 Section 807 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, as amended, 71 P.S. § 741.807, provides that "[n]o regular employe in the classified service shall be removed except for just cause." The courts have interpreted the undefined term "just cause" as merit-related and touching upon the competency and ability of an employee to perform his or her duties in some rational and logical manner. Galant v. Dep't of Environmen-

2. Lt. Mason alleged that the SCI–Chester discriminated against him because other employees had never been removed for refusing to work overtime. The Commission rejected Lt. Mason's allegation, concluding that he failed to establish that he was treated differently from other similarly situated employees. Lt. Mason further alleged that Capt. Jones ordered him to escort Brown to the hospital on February 7, 2002 in retaliation for his written report filed on January 14, 2002 charging Capt. Jones for violating the work rule. As a result of Lt. Mason's report, Capt. Jones attended a pre-disciplinary conference and received counseling. Accepting Capt. Jones' testimony that he was unaware of Lt. Mason's report on February 7, 2002, the Commission rejected Lt. Mason's allegation.

3. This Court's standard of review of the Commission's adjudication is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether necessary finding of the Commission are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; Bowman v. Dep't of Environmental Resources, 549 Pa. 65, 700 A.2d 427 (1997). In civil service cases, the Commission is the sole fact-finder and has exclusive authority to assess the credibility of witnesses and resolve the evidentiary conflicts. Hetman v. State Civil Service Commission (Berks County Children & Youth), 714 A.2d 532 (Pa.Cmwlth.1998), appeal denied, 558 Pa. 634, 737 A.2d 1227 (1999).

*tal Resources,* 534 Pa. 17, 626 A.2d 496 (1993); *Corder v. State Civil Service Comm'n,* 2 Pa.Cmwlth. 462, 279 A.2d 368 (1971). The appointing authority has the burden of establishing just cause for removing a civil service employee. *Long v. Pennsylvania Liquor Control Board,* 112 Pa.Cmwlth. 572, 535 A.2d 1233 (1988). Whether the civil service employee was removed for just cause is a question of law fully reviewable by this Court. *Ellerbee–Pryer v. State Civil Service Comm'n (Dep't of Corrections, SCI–Graterford),* 803 A.2d 249 (2002).

██ In 1989, the Legislature enacted Section 952(c) of the Act, added by Section 21 of the Act of June 26, 1989, 71 P.S. § 741–952(c), granting the Commission authority to modify the appointing authority's disciplinary action.[4] Section 952(c) provides:

> In case of any employe removed, furloughed, suspended, or demoted, the commission may modify or set aside the action of the appointing authority. Where appropriate, the commission may order reinstatement, with the payment of so much of the salary or wages lost, including employe benefits, as the commission may in its discretion award.

Under Section 952(c), therefore, the Commission may modify the appointing authority's disciplinary action in an appropriate case, even where the underlying charges against the civil service employee are proven. *Galant; Pennsylvania Liquor Control Board v. Flannery,* 141 Pa.Cmwlth. 228, 595 A.2d 685 (1991). Hence, the mere fact that the Department proved Lt. Mason's violations of the Code of Ethics alone does not establish that the SCI–Chester had just cause for removing him and that

the Commission abused its discretion under Section 952(c) in modifying the removal to the less severe sanction.

To support its argument that the Commission's modification of the removal of Lt. Mason to the five-day suspension was inappropriate, the Department relies on *Pennsylvania Game Comm'n v. State Civil Service Comm'n (Toth),* 561 Pa. 19, 747 A.2d 887 (2000). *Toth* involved the Pennsylvania Game Commission's Chief of Personnel Service who was removed for purposely altering the payroll computer system to put the incorrect information of the employees' longevity dates. He was later charged with the criminal offense of unlawful use of the computer and accepted into the Accelerated Rehabilitation Disposition program. The Commission on appeal reinstated him on the basis that his action was authorized by his superior.

While recognizing the Commission's authority under Section 952(c) of the Act to modify the agency's disciplinary action "even where the charges brought against the employees are proven," the Court stated that the Commission's authority is "not without boundaries" and must be "appropriate." *Toth,* 561 Pa. at 31, 747 A.2d at 893. The Court concluded in *Toth* that the Commission's modification of the discipline was inappropriate in light of the position the employee held, his admitted, unjustified criminal act, and his serious dereliction of the duties. *See also Dep't of Corrections v. Roche,* 654 A.2d 64 (Pa.Cmwlth. 1995), *appeal denied,* 541 Pa. 644, 663 A.2d 695 (1995) (the corrections officer's conduct of lying during the internal investigation and committing a perjury during the

---

4. Before the enactment of Section 952(c), this Court held that the Commission lacked authority to modify the employee's removal to a lesser discipline once the appointing authority proved the charges against the employee relating to his or her work performance. *Omelchenko v. Housing Authority of the County of Lebanon,* 58 Pa.Cmwlth. 494, 428 A.2d 274 (1981).

grand jury investigation provided just cause for his removal).

The facts found by the Commission in this matter are clearly distinguishable from those in *Toth* and *Roche.* While we do not condone Lt. Mason's behavior of refusing to obey his superior's direct order and using profanities, his conduct does not constitute a criminal offense as in *Toth* and *Roche.* The Commission accepted Lt. Mason's testimony that he could not work overtime on February 7, 2002 to take Brown to the hospital because his baby-sitter was not available after 11:00 p.m. Although Lt. Mason's family commitment may not justify his refusal to obey his superior's order, the Commission had the statutory authority under Section 952(c) of the Act to consider such factor in determining whether the sanction imposed by the SCI–Chester should be modified. Further, it was Lt. Mason's first refusal to obey his superior's order during his employment with the SCI–Chester since 1990. Finally, the record does not reveal a written justification for exceeding the normal range of sanctions recommended by the Director of Human Service. All the relevant facts considered by the Commission support a conclusion that it appropriately modified the sanction imposed by the SCI–Chester.

Section 803 of the Act, 71 P.S. § 741.803, provided: "An appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service. Such suspension shall not exceed in the aggregate thirty working days in one calendar year." [5] In this matter, the Commission found good cause to suspend Lt. Mason for his violations of the Code of Ethics. The Commission, therefore, did not abuse its discretion in modifying the removal of Lt. Mason to the five-day suspension without pay, which was within the recommended normal range of sanctions for Lt. Mason's conduct.

Accordingly, the order of the Commission is affirmed.

### O R D E R

AND NOW, this 17th day of December, 2003, the order of the State Civil Service Commission in the above-captioned matter is affirmed.

---

**5.** Section 803 was amended on November 27, 2002 to permit suspension up to sixty days in one calendar year.