**David D. CHITTISTER, Petitioner,**

v.

**STATE CIVIL SERVICE COMMISSION (Department of Community and Economic Development), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 7, 2001.

Decided Jan. 4, 2002.

Andrew J. Ostrowski, Harrisburg, for petitioner.

Nancy J. Kippenhan, Harrisburg, for respondent.

Before SMITH, Judge, KELLEY, Judge,[1] and JIULIANTE, Senior Judge.

KELLEY, Judge.

David D. Chittister (Chittister) appeals from a final order of the Civil Service Commission (Commission) which dismissed Chittister's appeal challenging his removal from regular Chief, Community Development Division, Housing and Development Manager employment with the Department of Community and Economic Development (DCED) and sustained the action of DCED in the removal of Chittister from employment. On June 27, 2001, a panel of Judges of this Court reversed the Commission's order. By order dated August 30, 2001, we granted reconsideration of our decision and accordingly, withdrew our order and opinion. Upon reconsideration, we confirm our prior ruling and reverse.

The facts of this case are as follows. By letter dated April 22, 1997, DCED removed Chittister from his position for failure to report to work. Chittister appealed his removal to the Commission on the basis that DCED did not have "just cause" to remove him.[2] Chittister was granted a hearing before the Commission pursuant to Section 951(a) of the Civil Service Act.[3]

Before the Commission, Chittister and DCED presented testimony and exhibits. Based upon the testimony and evidence presented, the Commission issued multiple findings, which can be summarized as follows. Prior to July 1996, Chittister was the Chief of the Community Development Division in the Department of Community Affairs Housing Office. On July 1, 1996,

---

1. The decision in this case was reached prior to the date that Judge Kelley assumed the status of senior judge on December 31, 2001.

2. Chittister also challenged his removal based upon discrimination and other non-merit factors. By letter dated February 11, 2000, the Commission held that Chittister was collaterally estopped from relitigating the discrimination claims because those claims had already been litigated in federal court.

3. Act of August 5, 1941, P.L. 752, *added by* the Act of August 27, 1963, P.L. 1257, *as amended*, 71 P.S. § 741.951(a). Section 951(a) relates to hearings on the merits for violations of the Civil Service Act resulting in permanent separation, suspension for cause, furlough or demotion.

the functions of the Department of Community Affairs Housing Office were transferred to the newly created DCED to be performed by DCED's Community Development Housing Office (Housing Office). Chittister served as the Acting Director of the Housing Office until September 16, 1996, when Lawrence Segal was appointed the Director of the Housing Office. After Segal's appointment, Chittister served as the Chief of the Community Development Division and was directly supervised by Segal.

Chittister and Segal worked without incident until late 1996 when Segal confronted Chittister about problems in the Housing Investment Partnership Program (Home Program). On January 16, 1997, Segal met with Chittister to discuss the problems with the Home Program. When asked about the issues, Chittister slammed his hand on the table and said, "That's all we do is talk about this." Segal slammed the table himself and said "You're right. We're done talking." Thereafter, Segal wrote a detailed memo outlining a work plan for Chittister concerning the Home Program, which included a list of tasks and deadlines and required the Home Program staff to submit weekly status reports.

On January 17, 1997, upon receiving the memo, Chittister met separately with Philip Calhoun, the Deputy Secretary for Administration, Connie Franklin, the Personnel Director and David Black, the Deputy Secretary for Community Affairs and Development, and advised them that he was having trouble with Segal, could no longer take the pressure and was considering resigning. As a result of these meetings, Black relocated Chittister from Room 358 to another office within DCED, Room 318. Black advised Chittister that the relocation was temporary and that he would have to look for other employment in the Commonwealth or return to Room 358 and Segal's supervision. Chittister advised Black that he would not return to Segal's supervision.

On January 21, 1997, Chittister met with Franklin to discuss his problems with Segal and to discuss other employment opportunities within DCED. Franklin showed Chittister a list of vacancies at DCED, but Chittister indicated that he was not willing to take a reduction in pay.

By letter dated February 4, 1997, Franklin notified Chittister that he would have until the close of business on February 14 to find other employment or would be returned to Room 358 and Segal's supervision effective February 17, 1997. By letter dated February 14, 1997, Chittister advised Black that he would return to work on February 18 but that it was not possible for him to return to his position under Segal's supervision. Chittister's counsel then contacted DCED and requested that they grant Chittister sick leave while he pursued applying for disability retirement. DCED granted Chittister sick leave pending his application for disability retirement. Chittister submitted leave slips for February 18, 1997 through May 2, 1997, which Segal authorized.

On March 24, 1997, Chittister withdrew his application for disability retirement. By letter dated March 25, 1997, Chittister's attorney advised DCED that Chittister's application was withdrawn. In mid-April or early May 1997, Segal was advised that he was no longer to approve Chittister's requests for sick leave. By letter dated April 11, 1997, DCED notified Chittister that if he intended to continue his employment with DCED, he must resume his duties under Segal's supervision. The letter further advised that Chittister would be paid leave through April 18, and if he failed to resume his assigned duties on April 21, 1997, he would be terminated. Chittister did not return on April 21, 1997.

By letter dated April 22, 1997, DCED removed Chittister from his position for failure to report to work as previously advised.

Ultimately, the Commission found the testimony of DCED's witnesses concerning the incidents culminating in Chittister's removal to be credible. The Commission found that DCED credibly established that Chittister's sick leave was granted upon the condition that Chittister was pursuing disability retirement. Once Chittister withdrew his application for disability retirement, he was no longer entitled to sick leave—leave granted conditionally and expressly so that he could pursue his application. Upon learning that Chittister had withdrawn his application, DCED expressly advised Chittister that his sick leave was only approved through April 18, 1997 and that he was to return to his assigned duties on April 21, 1997. However, Chittister did not return as directed. The Commission found that Chittister's failure to return to his duties directly related to his competency and ability to perform his duties and constituted just cause for his removal. On this basis, the Commission concluded that DCED established just cause for removal under Section 807 of the Civil Service Act, 71 P.S. § 741.807.[4]

By decision dated October 24, 2000, the Commission dismissed Chittister's appeal and sustained the action of DCED. This appeal now follows.[5] In his appeal, Chittister has presented the issue of whether the Commission erred in sustaining Chittister's termination from employment with DCED because substantial evidence cannot, as a matter of law, support a finding of just cause for termination for failure to

report to work where Chittister was on approved sick leave at the time of termination and DCED failed to follow leave-related procedures before terminating Chittister.

To begin, Section 807 of the Civil Service Act provides that "(n)o regular employe in the classified service shall be removed except for *just cause.*" 71 P.S. § 741.807 (emphasis added). The concept of just cause, however, is not statutorily defined. In defining the concept of just cause, this Court has emphasized a merit concept stating:

> We are able to discern that the legislative intent relating to one's relationship with the classified service turns upon a merit concept. This means that any "personnel action" carried out by the Commonwealth is to be scrutinized in the light of such merit criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability.

*Corder v. State Civil Service Commission,* 2 Pa.Cmwlth. 462, 279 A.2d 368, 371 (1971).

Where an employee alleges lack of just cause for removal, Commission hearings are governed by Section 951(a) of the Act and the attendant Rules of the Civil Service Commission at 4 Pa.Code § 105.15. The burden of proving a prima facie case of just cause is upon the appointing authority. Section 105.15(a) of the Rules of the Civil Service Commission, 4 Pa.Code

---

**4.** *Added by* the Act of June 1, 1945, P.L. 1366.

**5.** Our scope of review in civil service cases is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or necessary findings of

fact were unsupported by substantial evidence. *Daley v. Fayette County Housing Authority,* 654 A.2d 21 (Pa.Cmwlth.1994), *petition for allowance of appeal denied,* 542 Pa. 677, 668 A.2d 1138 (1995).

§ 105.15(a).[6]

Chittister contends that the Commission's finding that DCED established just cause for removal is erroneous as Chittister had a right to sick leave and should not have been terminated for failing to return to his assigned position while on approved sick leave. We agree.

Section 708 of the Act, 71 P.S. § 741.708,[7] provides "With respect to such other personnel management matters as hours of work, paid holidays, vacations and sick leave and employe training, employes in the classified service shall conform to standards and rules established by the Governor and the Executive Board for Commonwealth employes generally." According to the regulations established by the Executive Board, "sick leave" is defined as time away from the job with compensation when an employee becomes too ill to work or must be absent for valid sick-related reasons. 4 Pa.Code § 30.21. An employee shall be entitled to use sick leave after 30 days of service with the employer. 4 Pa.Code § 30.22. Sick leave shall be granted when an employee is required to be absent from work due to illness. 4 Pa.Code § 30.23. Proof of illness in the form of a certificate from a physician other licensed practitioner is required if the employee is absent for three or more consecutive work days or the employer has reason to believe that the employee is abusing sick leave privileges. 4 Pa.Code § 30.24. An employee shall be held to strict accountability for the statements made by

him concerning sick leave. *Id.* A misrepresentation shall subject the employee to disciplinary action. *Id.*

Relying on *White v. Department of Corrections,* 110 Pa.Cmwlth. 496, 532 A.2d 950 (1987), *petition for allowance of appeal denied,* 518 Pa. 628, 541 A.2d 1139 (1988), Chittister maintains that an employee cannot be penalized for using an earned benefit in a lawful manner. In *White,* an employee missed eleven days and was out on sick leave. The employee was suspended from his duties on a charge of unacceptable attendance. The appointing authority did not contest that the sick leave days were validly taken, but maintained that the valid use of sick days actually accrued if "excessive," can justify a suspension. On appeal, this Court held that an employee is entitled to utilize accrued sick leave and may not be penalized for using an earned benefit in a lawful manner. *Id.*

DCED counters that an appointing authority has just cause to remove an employee who refuses to report to work and assume regularly assigned duties as required. In support of its position, DCED relies upon *Mihok v. Department of Public Welfare, Woodville State Hospital,* 147 Pa. Cmwlth. 344, 607 A.2d 846 (1992) and *Marsh v. Department of Public Welfare,* 53 Pa.Cmwlth. 354, 417 A.2d 862 (1980). In *Mihok,* the appointing authority offered Mihok, who was on leave of absence without pay and benefits, five options[8] to clarify her employment status. The letter required a response by November 26, 1990

---

6. Section 105.15(a) provides:
   The appointing authority shall go forward to establish the charge or charges on which the personnel action was based. If, at the conclusion of its presentation, the appointing authority has, in the opinion of the Commission, established a prima facie case, the employe shall then be afforded the opportunity of presenting his case.
   4 Pa.Code § 105.15(a).

7. *Added by* the Act of August 27, 1963, P.L. 1257.

8. The options included a return to full unrestricted and unmodified duties; application for disability retirement; application for early retirement; vesting retirement monies; or resigning and withdrawing retirement contributions.

and failing to reply, Mihok would be removed from her position. Mihok responded November 28, 1990 through counsel who refused to accept any of the options and continued to assert the employee's claim for continued disability benefits under Act 534. As a result, Mihok was removed from her position. The Commission found that the appointing authority had just cause for the termination. On appeal, this Court affirmed the Commission's decision stating that the appointing authority acted properly in clarifying Mihok's status, and her failure to either return to full unrestricted duty or to exercise any other available options supported the appointing authority's removal for just cause. *Id.*

Similarly, in *Marsh,* an employee had taken a leave from work to recover from injuries she had sustained in an automobile accident. After using all of her annual allotment of leave, she was placed on a leave of absence without pay. When this extended leave of absence expired, she notified the appointing authority that she would then be available only for light work. The appointing authority responded that no such light work was available, and notified her that her employment would be terminated if she failed to return to work. Upon her failure to return, the employee was terminated. The Commission determined that the appointing authority had just cause for the removal. This Court affirmed.

9. *Added by* the Act of June 1, 1945, P.L. 1366. This section provides:

> An employe who has been granted a leave of absence at the discretion of an appointing authority shall, upon expiration of the leave of absence, have the right of return to the class and civil service status from which leave was granted, or to any class and civil service status which he previously held, provided such class is contained in the current class plan of the agency, or to any class and civil service status in the same or lower grade, provided

■ We find that the instant case is more analogous to *White* than *Mihok* and *Marsh.* *Mihok* and *Marsh* do not involve employees on "sick leave," but rather employees on "leaves of absence." The distinction is critical. A "leave of absence" is governed by Section 807.1 of the Civil Service Act, 71 P.S. § 741.808,[9] which provides that a leave of absence is granted at the appointing authority's discretion and the extent or termination of that leave is likewise within the appointing authority's discretion. *See Wilson v. Com., Bureau of Vocational Rehabilitation, Dept. of Labor and Industry,* 61 Pa.Cmwlth. 41, 432 A.2d 656 (1981). "Sick leave," by contrast, is an entitlement like wages for services performed, provided that it is validly taken and not abused. *Temple v. Pennsylvania Department of Highways,* 445 Pa. 539, 285 A.2d 137 (1971).

■ Our review of the record reveals that Chittister served 27 years with DCED and its predecessor. In 1997, Chittister requested and was *approved for* sick leave, which he had accumulated over his years of services. In compliance with the sick leave regulations, Chittister furnished DCED with letters from his treating physicians stating that Chittister is currently disabled from performing his job and that his disability is related to his work situation. The letter from Dr. Walter B. Watkin, Jr., M.D. stated:

> that he meets the minimum qualifications given in the classification plan of the agency, provided that in all three instances there is a vacancy with the same appointing authority. If there is no vacancy to which the employe on leave can be returned, he shall retain priority of return to the class from which the leave of absence was granted for a period of one year following the date of expiration of the leave, and during this time shall have precedence for employment over employes furloughed from the same class.

I have taken care of Mr. Chittister since his first myocardial infarction in 1981. He has a long standing history of chronic reoccurring depression along with coronary artery disease and chronic gastritis. Recently, he came to my office with an exacerbation of the GI tract and his depression, and I learned that this was brought about by a change in his work status and some problems at his place of employment. For that reason I have advised him that he should not be working at the present time until he can resolve that situation. I feel that it would be in his best interest not to be exposed to that stress because of his other pre-existing medical conditions.

Reproduced Record (R.) 175a. The letter from psychologist, Dr. Larry D. Walker stated:

I have seen Mr. Chittister on two occasions (February 21, 1997 and February 27, 1997) for psychological evaluation and therapy. It appears quite evident to me that Mr. Chittister is experiencing major depression resulting from significant stressors related to employment. I would recommend that he not return to work until his symptoms are better controlled, specially in light of his previous and current medical conditions, which are exacerbated by stress.

R. 176a. DCED did not challenge the sufficiency of the doctor's letters. DCED approved sick leave through to and including May 2, 1997. Although DCED granted sick leave upon the condition that Chittister was applying for disability retirement and Chittister withdrew his application, the fact remains that DCED had approved sick leave until May 2, 1997. Therefore, Chittister was entitled to utilize this sick leave and should not have been penalized for using an earned benefit in a lawful manner. DCED has made no showing that Chittister was utilizing this benefit in an unlawful manner. We, therefore, conclude that DCED did not have "just cause" to terminate Chittister for failing to return to work while he was on approved sick leave.

Accordingly, the order of the Commission is reversed.

### ORDER

AND NOW, this *4th* day of *January* 2002, upon reconsideration, the order of the Civil Service Commission, at Appeal No. 19926, dated October 24, 2000, is reversed. This case is remanded to the Civil Service Commission to calculate back pay for the period of April 21, 1997 through May 2, 1997 and to determine whether Chittister was available to return to work following the expiration of his sick leave and whether reinstatement is an appropriate remedy.