**Nathaniel HARGROVE, Petitioner,**

v.

**PENNSYLVANIA STATE CIVIL SERVICE COMMISSION (Department of Corrections), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 17, 2003.
Decided June 15, 2004.

---

Thomas W. Jennings, Philadelphia, for petitioner.

Alan M. Robinson, Camp Hill, for respondent.

· BEFORE: PELLEGRINI, J., SIMPSON, J., and MIRARCHI, Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Nathaniel Hargrove (Hargrove) appeals from an order of the State Civil Service Commission (Commission) denying his appeal from a one-day suspension of his employment imposed by the Department of Corrections, State Correctional Institution at Camp Hill (Employer). We affirm.

Hargrove is employed by Employer as a Corrections Officer 1, a regular classified service position. On June 26, 2002, Employer suspended Hargrove for one day for excessive non-prescheduled absences. Hargrove appealed the suspension, and the Commission held a hearing, at which Employer presented the testimony of its witnesses regarding the following undisputed events leading to Hargrove's suspension.

A new "combined" leave system was adopted in the collective bargaining agreement entered into in 1989 between Employer and the bargaining unit consisting of corrections officers and psychiatric security employees. Under the new system, employees earn specified "prescheduled leave" and "non-prescheduled leave" based on their years of credited state service. Article 10, Section 2 of the current collective bargaining agreement (Agreement) for the period from July 1, 2001 to June 30, 2004 provides:

> Employees will be able to use earned combined leave for any reason. All leave will be requested in advance and approved (pre-scheduled) subject to management's responsibility to maintain efficient operations. Emergency re-

quests (non pre-scheduled call offs) for leave will be approved in cases of employee illness, family illness, a stress day or other legitimate reasons. *However, excessive requests for non pre-scheduled leave will be treated under the basic concepts of just cause discipline.* (Emphasis added.)

In administering the combined leave system, Employer has used the "Guidelines for Combined Leave" (Guidelines) adopted in 1990 pursuant to the arbitration award. The Guidelines defines the term "excessive request" for non-prescheduled leave as "[a]ny paid non-prescheduled absence over five (5) occasions in any rolling 12 month period." A rolling 12–month period begins on the date of the employee's first non-prescheduled absence not forgiven by Employer. The Guidelines further provide:

Any unauthorized absence will be dealt with in accordance with normal disciplinary procedures; (i.e. employe calls in sick and employe is seen on golf course).

. . . .

Local Managers are given some flexibility in determining when excessive use of Non–Prescheduled Leave has occurred.

Each instance of Non–Prescheduled Leave should be documented with the reason for the leave usage.

Hargrove's rolling 12–month period began to run on December 22, 2001 when he recorded his first non-prescheduled absence. He recorded four more non-prescheduled absences on January 6, January 28, February 10 and February 24, 2002. After Hargrove's fifth non-prescheduled absence on February 24, 2002,

Employer held a formal counseling session and advised Hargrove that a further non-prescheduled absence could result in a disciplinary action. Hargrove thereafter received a written reprimand after his sixth non-prescheduled absence on March 12, 2002. He called in sick on April 16, April 17 and May 10, 2002, but they were forgiven because he submitted supporting medical documentation.

On May 20, May 28 and June 21, 2002, Hargrove called off from work, stating to the Junior Shift Commander that he was sick. Upon his return to work, he completed leave slips in which he indicated that he was absent due to illness, without submitting any supporting medical documentation. Lieutenant John Mohn then placed a check mark next to the word "approved" and "wrote C–4" on the leave slips to indicate that Hargrove had four or more days of remaining accrued non-prescheduled leave. After its review of Hargrove's record, Employer treated his last absences on May 20, May 28 and June 21, 2002 as one and Hargrove's seventh non-prescheduled leave and held a factfinding session. At a subsequent pre-disciplinary conference, Hargrove stated that he was absent on May 20, May 28 and June 21, 2002 because he could not get up for work due to malfunctioning of his alarm clock.

Based on the evidence presented by Employer, the Commission found that Hargrove did not take the accrued non-prescheduled leave in a lawful manner and that his use of the non-prescheduled leave was excessive. Concluding that Employer suspended Hargrove for good cause, the Commission denied Hargrove's appeal. Hargrove's appeal to this Court followed.[1]

1. This Court's review of the Commission's adjudication is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether necessary finding of the Commission are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Department of Correc-*

▮▮ Section 803 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.803, provides that "[a]n appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service." The undefined term "good cause" under Section 803 of the Act has been interpreted as merit-related and touching upon the employee's competency and ability to do the job in some rational and logical manner. *McCain v. Department of Education, East Stroudsburg State College,* 71 Pa.Cmwlth. 165, 454 A.2d 667 (1983). The employee's conduct of failing to properly execute the duties, or hampering or frustrating the execution of the duties constitutes good cause to suspend the employee. *Id.* The appointing authority has the burden of establishing that the employee was suspended for good cause. *Toland v. State Correctional Institution at Graterford, Bureau of Correction,* 95 Pa.Cmwlth. 634, 506 A.2d 504 (1986).

▮▮ Hargrove does not dispute the Commission's finding that his absences on May 20, May 28 and June 21, 2002 were his seventh occasion of non-prescheduled absences during the rolling 12–month period under the Guidelines. Hargrove contends, however, that because the Guidelines have not been incorporated into the Agreement, the definition of the term "excessive" requests for non-prescheduled leave in the Guidelines is inapplicable in determining whether his requests were excessive.

▮▮ In the labor law, however, the evidence of past practice may be used to,

*inter alia,* clarify ambiguous language in the labor agreement, implement language setting forth only a general rule, and create or prove a separate enforceable condition of employment which cannot be derived from the express language. *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 381 A.2d 849 (1977); *South Park Township Police Ass'n v. Pennsylvania Labor Relations Board,* 789 A.2d 874 (Pa. Cmwlth.2002), *appeal denied,* 569 Pa. 727, 806 A.2d 864 (2002).

Carol Scott, the contract negotiations and administration coordinator of the Office of Administration, Bureau of Labor Relations, testified that the Guidelines had been used since 1990 in administering the combined leave under the collective bargaining agreements. Moreover, Hargrove does not dispute his awareness that Employer has applied the Guidelines to regard more than five non-prescheduled absences to be excessive. He received counseling after his fifth non-prescheduled absence and a written reprimand after his sixth non-prescheduled absence. The evidence in the record thus establishes the practice of administering the combined leave provisions of the collective bargaining agreements pursuant to the terms of the Guidelines adopted in 1990. Hence, we conclude that the definition of the term "excessive" under the Guidelines is applicable in determining whether Hargrove's non-prescheduled absences were excessive.

Hargrove next contends that the Commission erred in finding that his non-prescheduled absences were excessive where the record shows that he used the non-

tions, State Correctional Institution at Chester v. State Civil Service Commission (Mason), 837 A.2d 1273 (Pa.Cmwlth.2003). In civil service cases, the Commission is the sole factfinder and has exclusive authority to assess the credibility of witnesses and resolve the

evidentiary conflicts. *Hetman v. State Civil Service Commission (Berks County Children & Youth),* 714 A.2d 532 (Pa.Cmwlth.1998), *appeal denied,* 558 Pa. 634, 737 A.2d 1227 (1999).

prescheduled leave on May 20, May 28 and June 21, 2002 in a lawful manner and that he had sufficient accrued leave days to cover his non-prescheduled absences.

To support his contention, Hargrove relies on *White v. Department of Corrections,* 110 Pa.Cmwlth. 496, 532 A.2d 950 (1987), *appeal denied,* 518 Pa. 628, 541 A.2d 1139 (1988), a case decided before the adoption of the combined leave in January 1990. *White* involved the corrections officer who was suspended for one day for his absences on sick leave on eleven occasions during the 17–month period. While admitting that the accrued sick leave was validly taken, the appointing authority argued that it had good cause to suspend the corrections officer because his sick leave was excessive. In rejecting the appointing authority's argument, this Court stated:

> First, we believe that an employee cannot be penalized for using an earned benefit *in a lawful manner.* Again, we emphasize that the Appointing Authority does not contend that the sick leave was improper, but merely excessive, despite the fact that Petitioner had the sick leave time accrued. If, as the Appointing Authority asserts, it must keep its staffing at high levels for security purposes, it has other options to discourage abuse of sick leave such as requiring employees to produce written medical excuses. No such requirement was placed upon Petitioner, although he did produce such documentation for seven of his eleven absences. The Appointing

Authority cannot punish employees for using validly earned benefits.

*Id.* at 951 (emphasis added).

■ *White* is factually distinguishable and does not support Hargrove's contention. The Agreement expressly limits the use of non-prescheduled leave to "employee illness, family illness, a stress day or other legitimate reasons." Hargrove conceded at the pre-disciplinary conference that he was absent on May 20, May 28 and June 21, 2002 because he could not get up for work due to malfunctioning of the alarm clock, not because he was sick. Hargrove failed to present any other "legitimate reasons" for his absences. Unlike *White,* the undisputed facts support the Commission's finding that Hargrove did not use his earned leave in a lawful manner.

■ Hargrove further contends that because Lieutenant Mohn "approved" the leave slips submitted after his absences on May 20, May 28 and June 21, 2002, those absences should not be considered in determining whether his non-prescheduled absences were excessive.[2]

Hargrove's reliance on the approval of the leave slips is misplaced. The Guidelines provide that "[a]fter the fifth occasion of Non–Prescheduled Leave within any twelve month period, an employe's record should be reviewed and a determination made as to whether the record shows excessive use based on the reasons and factual support for the absences." Accepting Lieutenant Mohn's testimony, the Commission found that when Hargrove's leave

---

2. Hargrove also contends that the Commission's finding that Employer's approval of the leave slips does not constitute its approval of the non-prescheduled absences is inconsistent with its previous decisions. Because the specific facts in the Commission's previous decisions are not before us, we cannot determine whether the Commission rendered an incon-

sistent decision in this matter. Moreover, the administrative agency is not subject to the rule of *stare decisis,* and its prior adjudications are not binding on this Court. *Bell Atlantic–Pennsylvania, Inc. v. Pennsylvania Public Utility Commission,* 672 A.2d 352 (Pa. Cmwlth.1995).

slips were approved, Lieutenant Mohn was not in a position to review Hargrove's record and determine whether the requests for non-prescheduled leave were excessive; and Lieutenant Mohn approved the leave slips merely to indicate that Hargrove had sufficient accrued leave days available to cover the three days of absences, not to indicate that Employer condoned those absences. Because the Commission's findings are supported by Mohn's testimony, those findings may not be disturbed on appeal.

Since the Commission's conclusion that Employer suspended Hargrove for good cause is supported by the record, the order of the Commission is affirmed.

## *ORDER*

AND NOW, this 15th day of June, 2004, the order of the State Civil Service Commission in the above-captioned matter is affirmed.