IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark A. Benson,                              :
                        Petitioner           :
                                             :   No.  346 C.D. 2017
            v.                               :
                                             :   Argued:  November 14, 2017
State Civil Service Commission               :
(Potter County Human Services),              :
                        Respondent           :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  January 26, 2018


            Mark Benson petitions for review of the March 3, 2017 order and
adjudication of the State Civil Service Commission (Commission), sustaining the
removal imposed by his employer, Potter County Human Services (PCHS).  The issue
in this case is whether the Commission erred in determining that PCHS had just cause
to terminate Benson.  We conclude that the Commission did not err and affirm.


**Background**

            On April 2, 1985, Benson started working for PCHS.  By letter dated
February 25, 2016, PCHS notified Benson that it was removing him from his position
as a Mental Health Program Specialist 2, effective February 26, 2016.  Pursuant to the
Policy and Procedure Manual of PCHS (Policy Manual), three written reprimands in

any 12-month period is cause for termination of employment, and Benson received a total of five written reprimands in January and February 2016. (Commission's Findings of Fact (F.F.) at Nos. 1, 3-4, 31.)

As outlined in the letter dismissing him, Benson received the following written reprimands: (1) on January 20, 2016, for harassment of a client; (2) on January 20, 2016, for racial bias in the treatment of the same client; (3) on February 25, 2016, for failing to complete Section I of the Medical Assistance Transportation Review Instrument Program (MATRIP) with all the required information by the February 19, 2016 deadline; (4) on February 25, 2016, for knowingly and willfully overbilling for unloaded miles in connection with PCHS's transportation services for mental health patients; and (5) again on February 25, 2016, for insubordination and dereliction of duty for using vacation time to attend another job in violation of his supervisor's directive. (F.F. at No. 1; *see* Reproduced Record (R.R.) 316a-73a.)

Benson did not contest any of these reprimands within the internal appeal procedure that is available for employees of PCHS. On February 26, 2016, the day after receiving his removal letter, Benson issued a verbal request to resign from his position. The Potter County Board of Commissioners accepted his resignation by letter dated February 29, 2016. (F.F. at Nos. 32, 34-36.)

Thereafter, Benson appealed his removal to the Commission. After denying, without prejudice, the motion filed by PCHS to dismiss the appeal on the ground that Benson retired and was not terminated from his position, a Commissioner convened a hearing on June 29, 2016. At the hearing, PCHS presented the testimony of its Administrative Officer, Human Services Administrator, Fiscal Officer, a chief clerk and secretary of the Retirement Board, and the Executive Director of the Potter and McKean County Assistance Offices. PCHS also submitted a considerable amount

2

of documentary evidence, including letters and e-mail correspondence regarding the events leading up to and surrounding the reprimands. Benson did not present any testimony, but introduced into evidence a favorable written performance review for 2009-2010 and a formal description of his job and its duties. (F.F. at No. 38; Commission's decision at 1, 14; *see* R.R. at 151a-383a.)

In its adjudication, the Commission rejected the renewed argument of PCHS that the appeal should be dismissed because Benson retired in lieu of removal. In this regard, the Commission concluded that Benson's attempt to retire was not a legally valid resignation. Citing Commission Rule 101.51 (providing in pertinent part that "a resignation shall consist of a voluntary termination of employment evidenced by written notice"), the Commission reasoned: "[Benson] verbally notified [PCHS] that he was retiring only after he was removed" and "[PCHS'] witness testified that [Benson] stated that he was retiring because he was being removed;" therefore, "[Benson's] retirement cannot be considered a voluntary termination of employment." (Commission's decision at 15.)

Turning to the merits, the Commission determined that PCHS failed to meets its burden to substantiate the charges constituting the first two reprimands, *i.e.*, the January 20, 2016 reprimands for harassment and racial bias during the treatment of a client. In so holding, the Commission found that Benson's failure to appeal the reprimands internally did not equate into evidentiary admissions that he committed the offensive acts. The Commission concluded that, because PCHS did not present any evidence to substantiate the facts underlying the charges other than the written reprimands themselves, these two reprimands could not provide legitimate bases for discipline. (Commission's decision at 16-18.)

3

Concerning the three reprimands issued on February 25, 2016, the Commission found that PCHS provided sufficient evidence to substantiate the charges contained therein and concluded that, collectively, they provided PCHS with just cause to dismiss Benson. (Commission's decision at 21-22.)

Relying on what it found to be the credible testimony of the Human Services Administrator, the Commission determined that Benson failed to complete the MATRIP in a timely manner, noting that he received assistance and an extended deadline to finish the project. In making this determination, the Commission rejected Benson's argument that he worked to the best of his ability and his performance was adequate given the circumstances. More specifically, the Commission did not find persuasive Benson's contentions that his failure to complete the project was excusable because his department was short-staffed and PCHS had never previously completed a MATRIP. (F.F. at Nos. 9-18; Commission's decision at 18-19.)

The Commission also found that PCHS produced sufficient evidence to establish that, between January 22 and February 23, 2016, Benson knowingly and willingly overbilled for unloaded miles on two occasions. The Commission found that the Human Services Administrator and Fiscal Officer informed Benson, sometime after January 1, 2016, that PCHS would only bill for loaded miles and instructed him to amend contracts for transportation services to reflect this change. In so finding, the Commission discredited Benson's contention that his actions were inadvertent and declined to afford persuasive weight to hearsay testimony that Benson had received permission from the Director of the Department of Mental Health to bill for unloaded miles. (F.F. at Nos. 19-25; Commission's decision at 19-20.)

Finally, the Commission found that,

> [the Human Services Administrator] denied [Benson's] request for a day off and instructed him that while his

4

department was short-staffed and the [MATRIP] was not complete, he could not work at his second job during [PCHS'] business hours. Four days later [the Human Services Administrator] approved [Benson's] request for 2.5 hours of sick leave [for a doctor's appointment] and 1 hour of vacation. [The Human Services Administrator] saw [Benson] working at his second job during the 1 hour of vacation.

(Commission's decision at 20; *see* F.F. at Nos. 26-30; R.R. at 373a.)

In addressing Benson's assertion that the directive of the Human Services Administrator did not prohibit him from using approved vacation leave to attend his second job, the Commission first noted, correctly, that under *Chittister v. State Civil Service Commission (Department of Community and Economic Development)*, 789 A.2d 814, 818 (Pa. Cmwlth. 2002), and *White v. Department of Corrections*, 532 A.2d 950, 951 (Pa. Cmwlth. 1987), "an employee cannot be penalized for using an earned benefit in a lawful manner." (Commission's decision at 21.) However, the Commission went on to conclude:

Here, [PCHS] approved [Benson's] request for 1 hour of vacation. But [PCHS] disciplined [Benson] for insubordination and dereliction of duty once it discovered that he had used his 1 hour of vacation to defy its instruction that he was not to work at his second job during its business hours. In other words, [PCHS] did not discipline [Benson] for his use of his earned benefit, his vacation, but rather for refusing to comply with his supervisor's direct order.

(Commission's decision at 21.)

In addition to determining that the three reprimands of February 25, 2016, were substantiated and constituted just cause to remove Benson from his position, the Commission further concluded that these charges were directly related to Benson's

5

duties and job performance and bore a rational relationship to his competence and ability as an employee. (Commission's decision at 21-22.)

## Discussion

In his appellate brief,[1] Benson states that he has worked for PCHS for over 35 years; that prior to January 2016, he had never been subjected to any type of reprimand or discipline relative to his job performance; and that he had never received anything less than satisfactory job evaluations. Benson also stresses that on February 25, 2016, PCHS provided him with three reprimands, corrective action plans, and dismissal all at the same time, thereby depriving him of the opportunity to improve his performance or correct his errors. In this vein, Benson challenges the evidentiary and/or legal grounds for each of the three reprimands that PCHS issued on February 25, 2016, which ultimately combined together to serve as the basis for the Commission's conclusion that there was just cause for the dismissal.

Section 807 of the Civil Service Act[2] provides that "[n]o regular employe in the classified service shall be removed except for just cause." 71 P.S. §741.807. Although the Civil Service Act does not define "just cause," our Court has explained that "just cause for removal is largely a matter of discretion on the part of the head of the department." *Perry v. State Civil Service Commission (Department of Labor and Industry)*, 38 A.3d 942, 951 (Pa. Cmwlth. 2011). However, this discretion is qualified by the principle that "just cause must be merit-related and the criteria must touch upon [the employee's] competency and ability in some rational and logical manner." *Wei v.*

---

[1] "Our scope of review in civil service cases is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or necessary findings of fact were unsupported by substantial evidence." *Chittister*, 789 A.2d at 817 n.5.

[2] Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§741.1-741.1005.

6

*State Civil Service Commission (Department of Health)*, 961 A.2d 254, 258 (Pa. Cmwlth. 2008) (citation omitted). It is now well-settled that the appointing authority, here PCHS, bears the burden of proving just cause and the substance of the charges underlying the employee's removal. *Department of Transportation v. State Civil Service Commission (Bocchinfuso)*, 84 A.3d 779, 783 n.1 (Pa. Cmwlth. 2014).

In what may perhaps be his strongest argument, Benson contends that PCHS erred in utilizing the fact that he took approved vacation time to work at Potter County Beverage as a reason to discharge him. Benson asserts that the directive of the Human Services Administrator not to work at his second job only encompassed Benson's prior practice of leaving early on Tuesdays to work there, and did not extend to the situation where he requested vacation time and that time was approved. Benson further contends that vacation time is an accumulated right of an employee and, once approved by an employer, an employee can use it in any manner that he deems fit.

Whether it be paid sick or vacation leave, if that leave has accrued to an employee through a fringe benefit package, regulation, or legislative act, the leave is an entitlement and an employee can use it for legitimate purposes, *e.g.*, sick leave when the employee is suffering from a bona fide illness and vacation leave when the employee desires leisure time. *See Chittister*, 789 A.2d at 818-20; *see also* section 222 of the Administrative Code of 1929 (Code), Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §82 (creating an entitlement to annual and sick leave for certain governmental employees). However, as a general rule, unpaid leave time is granted at the employer's discretion and the extent or termination of that leave is within the employer's discretion. *See Chittister*, 789 A.2d at 818-19. Within reason, an employer can limit how an employee uses approved time away from work, *see Hargrove v. Pennsylvania State Civil Service Commission (Department of Corrections)*, 851 A.2d 257, 261 (Pa.

Cmwlth. 2004), and regardless of whether it is paid or unpaid leave, the employee must request and use the time "in a lawful manner." *White*, 532 A.2d at 951.

In *White*, an employer suspended an employee for one day because he took 11 sick days during a 17-month period. Although the employer admitted that the employee used his accrued sick leave for a proper purpose, *i.e.*, he was feeling ill, the employer contended that it had just cause to suspend the employee on the ground that his sick leave was excessive. On appeal, this Court disagreed, reasoning as follows:

> [W]e believe that an employee cannot be penalized for using an earned benefit in a lawful manner. Again, we emphasize that the [employer] does not contend that the sick leave was improper, but merely excessive, despite the fact that [the employee] had the sick leave time accrued. If, as the [employer] asserts, it must keep its staffing at high levels for security purposes, it has other options to discourage abuse of sick leave such as requiring employees to produce written medical excuses. No such requirement was placed upon [this employee], although he did produce such documentation for seven of his eleven absences. The [employer] cannot punish employees for using validly earned benefits.

*Id.* at 951 (emphasis added). Hence, the *White* Court vacated the Commission's order upholding the employee's suspension and remanded for further proceedings.

By contrast, in *Hargrove*, an employer suspended the employee for one day for excessive non-prescheduled absences. In that case, a collective bargaining agreement (CBA) expressly limited the use of non-prescheduled leave to "employee illness, family illness, a stress day or other legitimate reasons." 851 A.2d at 261. However, the employee took leave days because "he could not get up for work due to malfunctioning of the alarm clock, not because he was sick," and he "failed to present any other 'legitimate reasons' for his absences." *Id.* This Court determined that, per the CBA, the employee "did not use his earned leave in a lawful manner," *id.*, and we found that this fact distinguished the matter from the employee's situation in *White*.

8

Importantly, our Court in *Hargrove* further rejected the employee's argument that, because his supervisor approved his leave slips for certain absences, those absences could not be considered in determining whether his pre-scheduled absences were excessive. In concluding that the employee's reliance on the approval of the leave slips was misplaced, we found that the supervisor's testimony established that "when the [employee's] leave slips were approved, [the supervisor] was not in a position to review [his] record and determine whether the requests for non-prescheduled leave were excessive." *Id.* at 261. Rather, we said, the supervisor "approved the leave slips merely to indicate that [the employee] had sufficient accrued leave days available to cover the three days of absences, not to indicate that [the] [e]mployer condoned those absences." *Id.* at 261-62. Accordingly, this Court upheld the disciplinary action taken against the employee in *Hargrove* for unnecessary, excessive absences.

Here, the facts are undisputed and Benson did not provide any testimony or documentary evidence related to the circumstances underlying the reprimands. At the hearing, the Human Services Administrator testified as follows:

> Q. Does [PCHS] provide any special privileges to [Benson] that it does not provide to other employees?
>
> A. Yes. I've allowed [Benson] to take every Tuesday afternoon off for the last four years to go to work at another job at Potter County Beverage because I've known him – his family situation and financial situation.
>
> \* \* \*
>
> Q. Did you give any specific instructions about [Benson] and his ability to take time off work one day a week during the time that . . . this document [*i.e.*, the MATRIP] needed to be prepared?

9

A.     On February 18th I sent an e-mail to Benson . . . that he was no longer permitted to work at the Potter County Beverage . . . during normal [PCHS] business hours until the [MATRIP] was completed and submitted.

(R.R. at 62a, 86a; *see* R.R. at 370a.)

On February 22, 2016, Benson submitted a leave slip, requesting 2.5 hours of sick leave for a doctor's appointment (12:30 p.m. to 3 p.m.) and 1.0 hours of vacation leave (3 p.m. to 4 p.m.) for Tuesday, February 23, 2016.  On the leave slip, there is lined space next to the "vacation" request heading, which, evidently, is there to allow the employee to provide a description of the reason for requesting leave.  However, Benson did not fill out this portion of the leave slip, and the Human Services Administrator approved the leave slip on February 23, 2016, ostensibly early in the morning.  Significantly, the Human Services Administrator testified that he approved Benson's request for one hour of vacation time based on the assumption that Benson would use the time to drive straight home after his doctor's appointment, rather than having to drive back to work and then home.  (F.F. at Nos. 29-30; R.R. at 95a-97a, 368a, 373a.)

At 3:51 p.m. on February 23, 2016, the Human Services Administrator observed Benson at Potter County Beverage during the hour in which he was using vacation time.  (F.F. at No. 30; R.R. at 99a-100a, 371a-73a.)  Subsequently, the Human Services Administrator issued Benson a written reprimand charging him with "insubordination due to the fact that he willingly and knowingly went to work at the Potter County Beverage store after receiving an e-mail and being told . . . that he was no longer permitted to work there until the [MATRIP] was completed and submitted." (R.R. at 95a-96a.)  By the end of the workday on February 23, 2016, Benson had neither completed nor submitted the MATRIP to his supervisor and/or the Human Services Administrator.  (F.F. at No. 30; R.R. at 95a-96a.)

10

Upon our review, we conclude that the facts of this case are more akin to the facts in *Hargrove* than those in *White*. Although the parties engaged in a course of conduct where Benson was permitted to leave early on Tuesdays to work at Potter County Beverage, the Human Services Administrator discontinued that practice, advising Benson that he could not work there during normal office hours unless or until he completed the MATRIP. Absent a rule or policy to the contrary, an employer possesses discretion to grant or deny vacation leave based on the particular needs of the institution, and the restriction imposed by the Human Services Administrator was explicit. This overt requirement or limitation on the use of leave was not present in *White* and it therefore differentiates that case from the instant case. Critically, Benson does not dispute the necessity and urgency of the MATRIP project, and he fails to advance any argument that the directive of the Human Services Administrator was pretext for some impermissible motive.

Moreover, analogous to the scenario in *Hargrove*, the Human Services Administrator could not determine from the leave slip that Benson would use the hour of vacation time to work at Potter County Beverage. Instead, he granted Benson leave on the belief that Benson requested the time in order to avoid having to travel back to work. As such, the simple fact that the Human Services Administrator granted one hour of vacation time did not prove that he condoned the actual reason for which Benson used the hour. *See Hargrove*, 851 A.2d 262.

In view of the Commission's findings and credibility determinations, we must also reject Benson's arguments that he did not deliberately disobey the directive of the Human Services Administrator. Typically, issues surrounding the scope of an employer's demand/order and whether an employee violated that demand/order are factual in nature. *See generally Hart v. Unemployment Compensation Board of*

11

*Review,* 452 A.2d 72, 73 (Pa. Cmwlth. 1981). In the present case, the Commission was the fact-finder and sole arbiter of credibility, *Hetman v. State Civil Service Commission (Berks County Children and Youth)*, 714 A.2d 532, 537 n.9 (Pa. Cmwlth. 1998), and when evaluating findings of fact, our review is generally confined to determining whether the findings are supported by substantial evidence. *Martin v. State Civil Service Commission (Department of Community and Economic Development)*, 741 A.2d 226, 229 (Pa. Cmwlth. 1999). In making this assessment, we must view the evidence and all its reasonable inferences in the light most favorable to PCHS as the prevailing party. *Id.*

As reflected in an e-mail and testimony, on February 18, 2016, the Human Services Administrator informed Benson in writing that "he was no longer permitted to work at the Potter County Beverage . . . *during normal [PCHS] business hours* until the [MATRIP] was completed and submitted." (R.R. at 86a; *see id.* at 370a) (emphasis added). Applying the above-mentioned standard of review, we conclude that this evidence provided a sufficient basis for the Commission to find that the work-related restriction applied to all instances where leave was requested by Benson "during normal business hours," and not just the past practice of the parties, where Benson was "allowed . . . to take every Tuesday afternoon off." (R.R. at 62a.) We further conclude that the Commission, as the fact-finder, could reasonably infer that Benson knowingly and willfully violated the order of the Human Services Administrator. Irrespective of any claim by Benson that he was confused as to the scope and/or nature of the directive, Benson was previously permitted to leave PCHS on Tuesdays to work at Potter County Beverage, and despite the prohibitory directive of the Human Services Administrator, he used one hour of vacation to work there on Tuesday, February 23.

Given this record, we conclude that the Commission did not err in determining that Benson committed insubordination. Consequently, the Commission properly considered Benson's insubordination in deciding whether there was just cause to dismiss him. *See Hargrove*, 851 A.2d at 261-62; *see also Harris v. Commonwealth Secretary of Education*, 372 A.2d 953, 957-58 (Pa. Cmwlth. 1977).

With respect to the other two reprimands issued on February 25, 2016, Benson does not provide the Court with a compelling reason to believe that the Commission erred in determining that the conduct forming these reprimands were not substantiated with sufficient evidence. At most, Benson asks us to reweigh the evidence and make our own credibility determinations and factual findings regarding the reasonableness of his work efforts and the legitimacy of his actions.

For instance, in terms of the MATRIP project, Benson asserts that it "was the first time PCHS had been required to complete such an instrument;" he was assigned the task "at a time when his department was short-staffed;" and his supervisor imposed "draconian deadlines." (Benson's brief at 16-17.) The Commission, however, considered these arguments and did not find them to be weighty or convincing. (Commission's decision at 18.) *See Wei*, 961 A.2d at 256-59; *Adamovich v. Department of Public Welfare*, 504 A.2d 952, 955-96 (Pa. Cmwlth. 1986). Instead, relying on the credible testimony of the Human Services Administrator, the Commission found that Benson needed only three and one-half hours to complete the MATRIP and he failed to do so despite receiving assistance and being granted a 10-day extension on the deadline. (F.F. at Nos. 14, 16; Commission's decision at 18; *see* R.R. at 322a-41a.) This Court "will not disturb the Commission's determinations regarding credibility or the weight of evidence," *Martin*, 741 A.2d at 229, and where, as here, substantial evidence exists to support the findings the Commission actually

13

made, those findings are "conclusive and may not be disregarded." *Polinsky v. Department of Transportation*, 569 A.2d 425, 428 n.2 (Pa. Cmwlth. 1990). As such, the Commission did not err in finding that Benson failed to complete the MATRIP in a timely manner, which is a valid basis supporting termination of employment. *See Wei*, 961 A.2d at 258-59.

Concerning the improper act of billing for unloaded miles, Benson points to the hearsay testimony of the Fiscal Officer, who stated that when he confronted Benson about the matter, Benson said that the Director of the Mental Health Department authorized him to charge for unloaded miles. The Commission, however, chose not to credit this testimony and declined to draw an adverse inference against PCHS because the Director did not testify,[3] finding that Benson himself could have called her as a witness. (Commission's decision at 19-20.) As a reviewing court, this Court may not reweigh the evidence and substitute our judgment for that of the fact-finder, *Masneri v. State Civil Service Commission (Western Center, Department of Public Welfare)*, 712 A.2d 821, 823 (Pa. Cmwlth. 1998), and the Commission cannot be deemed to have erred in failing to find hearsay testimony credible. Further, Benson was not entitled to an adverse inference because the Director, as a potential witness, was not peculiarly and exclusively within the reach and knowledge of PCHS and was equally available to both parties. *See Bennett v. Sakel*, 725 A.2d 1195, 1196 (Pa. 1999); *PNC Bank Corp. v. Workers' Compensation Appeal Board (Stamos)*, 831 A.2d 1269,

---

[3] "Generally, if a litigant fails to call a witness who presumably would support his allegation, the opposing party is entitled to have the jury instructed that it may infer that the witness, if called, would testify adversely to the party who failed to call him." *Bentivoglio v. Ralston*, 288 A.2d 745, 748 (Pa. 1972). As in most other rules, this one is subject to exceptions.

14

1285 (Pa. Cmwlth. 2003) (en banc).[4] Simply, there is substantial evidence of record to support the Commission's finding that Benson billed for unloaded miles on two occasions, (F.F. at No. 24; R.R. at 94a, 125a, 360a-61a), and we cannot set aside that finding. Pursuant to our case law, an employee's failure to perform his job duties correctly is a legitimate ground supporting termination. *See Corder v. State Civil Service Commission*, 279 A.2d 368, 371 (Pa. Cmwlth. 1971).

Citing the best evidence rule,[5] Benson also faults PCHS for failing to adduce a written contract between PCHS and an entity stating that the entity will only be billed for loaded miles. Based on credited testimony, the Commission found that the Fiscal Officer and Human Services Administrator "met with [Benson] and notified him that he could only bill for loaded miles and instructed him to change the contracts for transportation services to reflect that." (F.F. at No. 22.) On its face, this finding involves oral instructions and/or directives to Benson, and the material legal issue was whether Benson complied with the instruction not to charge for unloaded miles. As PCHS did not seek to prove the terms of a written instrument, such proof was unnecessary to establish misconduct on Benson's part. Hence, the best evidence rule does not apply, and PCHS was not required to admit the purported contracts into evidence. *See Commonwealth v. Dent*, 837 A.2d 571, 590 (Pa. Super. 2003).

In sum, the Commission's pertinent findings are supported by substantial evidence, the Commission did not abuse its discretion in making credibility and weight determinations, and its legal conclusions are free from error. Therefore, we find no

---

[4] Our decision in *PNC Bank Corp.* was superseded by statute on other grounds as stated in *Costello v. Workers' Compensation Appeal Board (Kinsley Construction, Inc.)*, 916 A.2d 1242, 1248 (Pa. Cmwlth. 2007).

[5] "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules, by other rules prescribed by the Supreme Court, or by statute." Pa.R.E. 1002; *see also* Pa.R.E. 1004.

merit in Benson's contentions challenging his reprimands for failing to timely complete the MATRIP and for overbilling for unloaded miles.

In his final arguments, Benson maintains that PCHS should have imposed a less severe sanction, provided him with time to correct the deficiencies listed in the reprimands, and forewarned him that his job was in jeopardy. However, PCHS is not legally obligated to take any of these actions, *see City of Philadelphia v. City of Philadelphia Civil Service Commission (Robinson)*, (Pa. Cmwlth., No. 1481 C.D. 2011, filed June 11, 2012) (unreported), slip op. at 12-13; the Policy Manual states that three written reprimands in any 12-month period is cause for termination of employment; and the evidence demonstrated that Benson's three reprimands were substantiated and related to his job duties and competence as an employee. Consequently, we cannot conclude that these assertions demonstrate that the Commission committed reversible error in sustaining the termination. *See Department of Corrections v. State Civil Service Commission (Clapper)*, 842 A.2d 526, 532-33 (Pa. Cmwlth. 2004).

Moreover, our conclusion remains true notwithstanding the length of Benson's employment, his favorable job performance evaluations in previous years, his assertion that he had never been reprimanded or disciplined prior to the present matter, and PCHS' inability to substantiate two out of the five reprimands. *See id.*; *Kunsak v. State Civil Service Commission (State Correctional Institute at Pittsburgh, Department of Corrections)*, (Pa. Cmwlth., No. 746 C.D. 2015, filed May 5, 2016) (unreported), slip op. at 13-16. As granted by statute, the Commission has broad discretion to modify or set aside the form of discipline; this Court, however, does not possess such authority. *Clapper*, 842 A.2d at 533. Absent bad faith, fraud, capricious action, or abuse of power, none of which are present here, this Court cannot substitute

16

its judgment for that of the Commission, even though we "might have a different opinion or judgment," *id.*, or believe that the discipline "seems disproportionately harsh." *Thompson v. State Civil Service Commission (Beaver County Area Agency on Aging and County of Beaver),* 863 A.2d 180, 184 (Pa. Cmwlth. 2004).

      Accordingly, we are constrained to affirm the Commission's order.[6]

 

_____
PATRICIA A. McCULLOUGH, Judge

---

[6] In so doing, we decline PCHS' invitation to affirm on the alternative ground that Benson resigned from his employment and was not discharged.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark A. Benson, :
               Petitioner :
                : No. 346 C.D. 2017
          v. :
                :
State Civil Service Commission :
(Potter County Human Services), :
             Respondent :

## ***ORDER***

AND NOW, this 26th day of January, 2018, the March 3, 2017 order of the State Civil Service Commission is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge